IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 91-5690

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

RUDOLPH ACOSTA

Defendant-Appellant

_____

Appeal from the United States District Court
for the Western District of Texas

_____

( August 27, 1992)

Before JONES and WIENER, Circuit Judges, and LITTLE, District
Judge.[1]

LITTLE, District Judge:

Appellant, Rudolph Acosta, was found guilty of five counts of passing counterfeit currency and one count of attempting to pass a counterfeit bill. On appeal, Acosta asserts that the evidence was insufficient to support his conviction on Counts 1, 2, 4 and 6. He also takes issue with the district court's increase of his offense level, positing that there was no evidence to support the court's conclusion that Acosta was responsible for more than nine negotiations of counterfeit currency. Finding no reversible error,

_____

[1] District Judge of the Western District of Louisiana, sitting by designation.

1

we affirm the convictions.  As to the sentencing, we vacate and remand for the following reasons.

                              I.

There is no serious dispute as to the facts.  In early December of 1990, Rudolph Acosta attempted to purchase merchandise of an insignificant value from a San Antonio, Texas convenience store.  The $20.00 bill tendered by Acosta appeared fishy to the clerk.  She refused to accept it.  Acosta replaced the questionable $20.00 with another seemingly valid bill, completed the sale, and departed the premises.  The clerk remembers Acosta telling her that he probably got the bogus bill from the Desperado, a local nightclub.

Suspecting that Acosta intended to pass the counterfeit currency, the store personnel notified local police.  The authorities went to the neighborhood and found Acosta in a laundromat.  When questioned, Acosta surrendered the invalid bill, and again opined that he had probably acquired the money from a local nightclub.

Government agents analyzed the bill and concluded that it was in fact counterfeit.  After noting all of the irregularities of the bill, the government assigned it circular number, "14923."  Thus, with this identification number, bills with the same characteristics passed in other locales could be traced to this same illegal batch.

Evidence was presented that Acosta was in a video rental store on 23 November 1990 and rented a film for cash.  The daily cash

                               2

receipts included a No. 14923 counterfeit bill.  There was no direct evidence linking Acosta to the counterfeit currency.  On 25 November 1990, Acosta returned to the video rental store and rented a video for cash.  Again, the deposit included a counterfeit $20.00 bill, No. 14923.   As in the prior transaction, there was no evidence presented to connect Acosta directly to the counterfeit currency.

In December of 1990, and January of 1991, the cafeteria operating in the hospital where Acosta was employed deposited two counterfeit twenties, both of which were No. 14923 bills.   A cafeteria employee testified that Acosta frequently purchased items of small value and paid for them with $10.00 or $20.00 bills.  On New Year's Day, 1991, someone passed a "14923" $20.00 bill for merchandise at a Diamond Shamrock store in San Antonio.  The store manager testified that Acosta had been in the store on the day the counterfeit $20.00 was passed and had purchased one package of cigarettes with a $20.00 bill.[2]  Thus, there is evidence placing Acosta at the store and paying for an item with a $20.00 bill.  The other transactions (the two video rentals and the two cafeteria purchases) are quite another story, however.  There is no evidence that Acosta paid for either video with a $20.00 bill, nor is there evidence that Acosta was in the cafeteria at any material time and paid for his purchases with a $20.00 bill.  In short, according to Acosta, the evidence is insufficient to support convictions on

_____

[2]     Acosta may not agree with the jury finding as to the cigarette purchase transaction, but he does not appeal that adverse result.

Counts 1, 2, 4 and 6.

Our standard of review for convictions based upon evidence allegedly insufficient to support the verdict is well known. We view the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict. United States v. Triplett, 922 F.2d 1174, 1177 (5th Cir. 1991) cert. denied, 1991 U.S. App. LEXIS 2995, 111 S.Ct. 2245, 114 L.Ed.2d 486 (1991). We must determine if a rational jury could have found Acosta guilty beyond a reasonable doubt. Not every reasonable theory of innocence need be excluded. All credibility choices are made in favor of the government. United States v. Montemayor, 703 F.2d 109, 115 (5th Cir. 1983) cert. denied, 464 U.S. 822, 104 S.Ct. 189, 78 L.Ed.2d 97 (1983); United States v. Green, No. 91-3573, 5420, 5424 (5th Cir. 1992); United States v. Breque, No. 91-5625, 5440, 5445 (5th Cir. 1992).

Acosta's complaint that no direct evidence links him to the counterfeit twenties, even if true, does not carry the day for reversal. Direct evidence of the defendant's guilt is not required. It is sufficient if the guilt is proved beyond a reasonable doubt by circumstantial evidence alone. United States v. Ivey, 949 F.2d 759, 766-767 (5th Cir. 1991).

To establish a violation of 18 U.S.C. § 472, the government must prove that the defendant knew the bills were counterfeit and that the defendant intended to defraud when he negotiated the bills. U.S.A. v. Lemaire, 712 F.2d 944, 947 (5th Cir. 1983), cert. denied, 464 U.S. 1012, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983).

4

As we have remarked, Acosta did purchase a pack of cigarettes with a $20.00 bill. A counterfeit No. 14923 $20.00 bill was included in the vendor's bank deposit for that day. It is admitted that Acosta possessed a "14923" bill when he conducted a convenience store transaction in December of 1990. Acosta ate at the hospital cafeteria and frequently paid for food items with $20.00 bills. On two occasions counterfeit bills were among the cafeteria's deposits. Acosta on two occasions paid cash for film rentals. On those two occasions, No. 14923 bills were deposited by the film store. Acosta's known and admitted possession of one bad bill, coupled with his purchase of a package of cigarettes with a $20.00 bill, tethered to his presence at the store while making a cash purchase where "14923" bills were discovered, and linked to his habit of paying for cafeteria food with $20.00 bills produce circumstances sufficient to support Acosta's conviction on all counts.

An additional piece of evidence, when considered by the jury, fortifies the verdict. Over Acosta's objection, the jury was informed that Acosta's brother had been charged with passing "14923" bills in the state of Michigan. On appeal, Acosta argues that possession by his brother of identical counterfeit currency is irrelevant in Acosta's Texas based criminal trial. Evidence of frequent interstate telephonic communications between the brothers was also introduced. The introduction of the evidence was not irrelevant. Acosta's brother's possession of identical counterfeit currency and Acosta's frequent communication with his brother may

5

well convince a trier of fact that the defendant's brother was his source of supply.  We note that one of the characteristics of the "14923" money is that on many bills the serial numbers are identical.  Thus, the Michigan Acosta possessed some bills with serial numbers identical to a bill possessed by the Texas Acosta.  Another reason for admitting evidence of the filial affinity is Acosta's denial that he communicated regularly with his northern brother.  The phone tolls cause one to conclude otherwise.

But a finding of relevancy will not end our analysis.  All evidence is not relevant and all relevant evidence is not per se admissible.  Rule 403 of the Federal Rules of Evidence requires that even relevant evidence be weighed before admission.

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

We ask the question, "Did unfairness result when evidence of the brother's criminal conduct was admitted?"  We think not.  Counsel for defendant Acosta, on cross-examination of the government's witness, established that no proof was presented connecting defendant Acosta to any crimes committed by his brother.  Moreover, the jury was instructed not to convict Acosta based on the guilt of any person not on trial.  We do not find that the trial court abused its discretion in admitting evidence of the defendant's brother's possession of counterfeit currency or evidence of interstate phone calls.  United States v. Gonzalez-

6

<u>Lira</u>, 936 F.2d 184, 191 (5th Cir. 1991).

                                    II.

The remaining issue to which we must turn our attention is the 21 month prison sentence imposed by the trial court.  In its application of the sentencing guidelines, the district court made an upward adjustment of the offense level because Acosta allegedly passed more than $2,000.00 in counterfeit currency.  The case in chief only involved $120.00.  The additional $1,880.00 stems from the testimony at the sentencing hearing of government agent Edna Perry.  Perry testified that 107 counterfeit "14923" $20.00 bills were passed in the San Antonio area and attributed those transgressions to Acosta.  If the Secret Service's evidence of Acosta's trafficking in forged $20.00 bills is accepted, the face value of the counterfeit transactions would exceed $2,000.00.  The offense level would be increased by one step, according to the guidelines.  This increase causes a concomitant increase in the imprisonment range.  Without this addition, the range is 12-18 months.  With the enhancement, the imprisonment range is 15-21 months.

Our mission in a dispute concerning an appropriate sentence is well established.

> Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable. 18 U.S.C. § 3742(e).  We accept findings of fact that are not clearly erroneous.  <u>United States v. Goodman</u>, 914 F.2d 696, 697-988 (5th Cir. 1990).

<u>U.S. v. Matovsky</u>, 935 F.2d 719, 721 (5th Cir. 1991).

7

Appellant's position is that the trial court was clearly erroneous when it accepted, as a fact, the assertion that appellant was responsible for an additional 107 utterances of "14923" $20.00 bills. The evidence of Acosta's association with the 107 transactions springs from the testimony, as we have said, of Secret Service Agent Edna Perry.

Agent Perry testified at the sentencing hearing that she had attended the trial of Art Acosta, appellant's brother, the week of 20 May 1991 in Detroit, Michigan. On direct examination, Perry recounted the testimony of the printer of the counterfeit bills, who stated that he had sent Art Acosta $60,000.00 in "14923" counterfeit bills. She further testified that 107 bills with the same defects were recovered in the South Texas area. On cross, however, Agent Perry stated that she had no knowledge of any evidence introduced at either the Michigan trial or the appellant's trial that a package was sent by the Michigan Acosta and received by the Texas Acosta.

The presentence report, adopted by the trial court and based on Perry's testimony, indicated that there had been 107 passes of counterfeit currency in the South Texas area. At the sentencing hearing, Agent Perry was not sure how many of the passes in the San Antonio area had actually been investigated by authorities. She could only estimate that there had been more than nine investigations completed. More importantly, Agent Perry testified that of the many establishments where "14923" bills were recovered, in only nine cases did employees identify appellant as having ever

8

been in the establishment. The appellant was later charged by superseding indictment with seven counts of passing counterfeit currency, one of which was dismissed with prejudice. The jury convicted the defendant on all six of the remaining counts in the indictment. No link was ever established between the appellant and the other 98 passes of counterfeit bills in the South Texas area.

The offense level calculations that include the nine bills found at the establishments where the appellant was positively identified as a customer can be supported by the record. Attributing the remaining 98 passes of similar counterfeit bills to the defendant, without corroborating identification, or in most cases, even an investigation, cannot be supported by the trial record, the presentence report or the evidence taken at the sentencing hearing and, in this court's opinion, is clearly erroneous. In reviewing a challenge to a sentence under the Guidelines, we must accept the factual findings of the district court unless clearly erroneous, but "[a] finding of fact will not satisfy this deferential standard, 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.'" U.S. v. Mitchell, No. 91-1864 (5th Cir. 1992). We have held "that the party seeking an adjustment in the sentence level must establish the factual predicate justifying the adjustment. We have also held that the appropriate analysis for the district court is whether the party seeking to adjust sentence level has proved by a preponderance of the relevant and

sufficiently reliable evidence the facts necessary to support the adjustment." <u>U. S. v. Alfaro</u>, 919 F.2nd 962, 965 (5th Cir. 1990). Here, it is quite clear that the Perry testimony lacks the necessary indicia of reliability to support an increase in the base level offense.

Acosta's convictions are AFFIRMED and his sentence is vacated and the matter REMANDED for resentencing in accordance with this opinion.