

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00459-CR

DEVIN GARDNER                                                   APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1311335D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Devin Gardner appeals his conviction for aggravated robbery with a deadly weapon and 25-year sentence. Because we conclude the trial court did not abuse its discretion by admitting cell-phone records, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

On December 23, 2012, shortly before 8:00 p.m., three men entered a convenience store and forced the owner to the floor at gunpoint. The first man had a red bandana covering the bottom half of his face and was carrying a gun. The second man was wearing a grey, hooded sweatshirt, with the hood up, had a bandana covering the bottom part of his face, and was carrying a long gun. The third man, who appeared to be unarmed, also had a hood over his head and a bandana covering the bottom of his face. The robbers took the store's cash and quickly left.

Soon after the robbery, Laura Betik, a teacher at a charter high school, watched a surveillance video of the robbery after it was shown on a television news program. Betik had been Gardner's basketball coach at school and had tutored him weekly in English. Betik estimated she spent on average of six hours a week with Gardner during basketball season and would see him daily in the halls of the school, which was "very small." Based on the first man's eyebrows, his hair cut, his body build, and his predilection for wearing red,[2] Betik was able to identify the first man on the surveillance video as Gardner.

Based on Betik's identification, police officers obtained a search warrant for cell-phone records for a number Gardner previously had reported to his community-supervision officer as his number. The warrant requested records for

---

[2]Not only was Gardner generally known to wear red, a picture from his Facebook account showed him wearing a red bandana covering the bottom half of his face.

a one-month period surrounding the December 23, 2012 robbery: December 16, 2012 to January 10, 2013. The name listed for the number's account was Shalonda Benjamin, Gardner's mother, but the subscriber was listed as Gardner. Six days before the robbery, texts from the number discussed having and shooting an Uzi, which is a longer, automatic handgun. A text message from the number sent approximately one hour before the robbery stated, "im fina hit a lick," which meant the person sending the text was about to commit a robbery. At trial, the State introduced the text messages into evidence, and Gardner objected on the bases that they had not been sufficiently connected to him such that they were relevant and were unfairly prejudicial. The trial court overruled Gardner's objections and admitted the cell-phone records into evidence.

Gardner's sole argument on appeal is that the cell-phone records were erroneously admitted because they were not relevant and unfairly prejudicial. Gardner's relevance complaint is based on his assertion that the cell-phone number was insufficiently connected to him; thus, the texts were not probative to any fact of consequence. *See* Tex. R. Evid. 401. Although Gardner does not specifically attack whether the records were properly authenticated under rule 901, the issue of authentication necessarily arises when the relevancy of the evidence depends upon its connection to a particular person. *See* Tex. R. Evid. 901(a); *Dering v. State*, No. 11-13-00076-CR, 2015 WL 1472013, at *2 (Tex. App.—Eastland Mar. 26, 2015, no pet.); *Campbell v. State*, 382 S.W.3d 545, 548–49 (Tex. App.—Austin 2012, no pet.). Authentication is a condition

3

precedent to admissibility, and the trial court's determination of admissibility is a preliminary one. *See* Tex. R. Evid. 104, 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). We review the admission of evidence for an abuse of discretion, which mandates deference to a trial court's ruling as long as it was within the zone of reasonable disagreement. *See Tienda*, 358 S.W.3d at 638.

Although "cell phones tend to be personal and user-specific," a "cell-phone number does not necessarily establish the identity of the user at a particular moment in time with the same definitiveness that fingerprints, signatures, photographs, or DNA may establish the identity of the perpetrator of a crime" because "cell phones can be purloined." *Butler v. State*, 459 S.W.3d 595, 601 (Tex. Crim. App. 2015); *Tienda*, 358 S.W.3d at 641. Accordingly, evidence that a cell-phone number is associated with a purported sender, standing alone, may be too attenuated. *See Butler*, 459 S.W.3d at 601. But the test for authenticity, and thus relevance, is a low bar and requires only a threshold showing that would be sufficient to support a finding that the matter in question is what its proponent claims. *Campbell*, 382 S.W.3d at 549. "In cases where a sponsoring witness may testify to an association between a cell-phone number and a purported author [of a text message from that number], other evidence may be available that might bridge the logical gap and permit a proper inference that the purported author sent the message." *Butler*, 459 S.W.3d at 602. For example, the text message's content, considered together with other

4

circumstances, may support a conclusion that a text message was indeed sent by the purported author. *See id.*

> In isolation, a cell phone number is in some respects similar to a return address on a letter. If the return address is the location where the purported author happens to live, it may suggest that the person who lives at the address is the author of the letter. Or it might not— at least on its own, if multiple people happen to live at or have access to that same address. But a letter bearing the return address of a purported author, combined with other circumstances including its appearance and contents, may be sufficient to authenticate a letter as having been sent by the person purported to be its author.

*Id.* at 601–02. A court's initial determination of whether evidence has been sufficiently authenticated to be admissible is dependent on the facts and circumstances of each case. *Tienda*, 358 S.W.3d at 639.

In this case, Gardner reported the cell-phone number as his own number to his community-supervision officer. Gardner was listed as the subscriber for the number. Ten days before the robbery occurred, a text from the number discussed having and shooting a gun similar to one of the guns seen in the surveillance video from the robbery. A text from that same number sent approximately one hour before the robbery showed that the sender was planning to commit a robbery. Betik, who was very familiar with Gardner, was able to positively and confidently identify Gardner as one of the robbers on the surveillance video. We conclude that the cell-phone records were authenticated through circumstantial evidence such that the number could be sufficiently connected to Gardner, rendering the records relevant and admissible under rules 401 and 901. *See* Tex. R. Evid. 401, 901(a); *Butler*, 459 S.W.3d at 603–05;

5

*Jackson v. State*, Nos. 05-14-00274-CR, 05-14-00275-CR, 2015 WL 3797806, at *3–4 (Tex. App.—Dallas June 17, 2015, no pet. h.) (mem. op., not designated for publication).  We overrule this portion of Gardner's first point.

Gardner also contends that the cell-phone records, even if relevant, were unfairly prejudicial and inadmissible.  *See* Tex. R. Evid. 403.  Relevant evidence is presumed to be more probative than prejudicial, and such evidence should be excluded under rule 403 only if there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value."  *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001).  It is important to note that the rule prohibits the admission of evidence carrying a danger of *unfair* prejudice.  Unfair prejudice justifying exclusion means more than a tendency to injure or prejudice a defendant, which of course is the point of introducing evidence in the first place, but refers to an undue tendency to suggest a decision on an improper basis.  *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999); 1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of Evidence* § 403.2 (3d ed. 2015).  In making a rule 403 determination, a trial court is to balance many factors including the probative force of the evidence, the State's need for the evidence, any tendency to suggest a decision on an improper basis or confuse the jury, and the likelihood that the presentation of the evidence will consume an inordinate amount of time.  *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006).

In this case, Betik's in-court identification of Gardner, while confidently given, was based on a video where the bottom half of the man's face was covered by a bandana, which shows the State's need for the cell-phone records. The State did not spend an inordinate amount of time at trial developing the cell-phone evidence, and there is no record indication that the admission of the records resulted in jury confusion or an improper verdict. We conclude that there was not a clear disparity between the degree of prejudice arising from admission of the cell-phone records and their probative value. Thus, the trial court did not abuse its discretion by admitting the evidence over Gardner's rule 403 objection. *See, e.g.*, *Dodson v. State*, No. 2-08-286-CR, 2010 WL 2889693, at *4–5 (Tex. App.—Fort Worth July 22, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding evidence of defendant's previous convenience-store robbery admitted in subsequent robbery prosecution more probative than prejudicial because prior robbery "assisted the jury in understanding Dodson's identity as one of the robbers in the D & S Food Mart robbery"); *Rogers v. State*, 183 S.W.3d 853, 864–65 (Tex. App.—Tyler 2005, no pet.) (concluding murder victim's phone message left for her boss the day before her death not unduly prejudicial); *accord United States v. Acosta*, 972 F.2d 86, 89 (5th Cir. 1992) (holding evidence of interstate phone calls between defendant and defendant's brother in counterfeiting prosecution not unfairly prejudicial).

We overrule Appellant's sole issue and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

7

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 6, 2015