PD-1022-15

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

**DEVIN GARDNER**
Petitioner

v.

**THE STATE OF TEXAS**
Respondent

---

Petition is in Cause No.1311335D from
Criminal District Court No. Two of Tarrant County, Texas,
and Cause No. 02-14-00459-CR in the
Court of Appeals for the Second District of Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Devin Gardner

RECEIVED IN
COURT OF CRIMINAL APPEALS

August 11, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

| | |
|---|---|
| Trial Judge: | Honorable Louis Sturns, presiding judge, 213th Criminal District Court of Tarrant County |
| Appellant: | Devin Gardner |
| Appellant's Trial Counsel: | Abe Factor<br>TBN: 06768500<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117 |

AND

Elizabeth Cortright
TBN: 24066884
Attorney at Law
110 East Weatherford
Fort Worth, Texas 76102

| | |
|---|---|
| Appellant's Counsel on Appeal: | Abe Factor<br>TBN: 06768500<br>Factor, Campbell & Collins<br>Attorneys at Law<br>5719 Airport Freeway<br>Fort Worth, Texas 76117 |
| Appellee: | The State of Texas |
| Appellee's Trial Counsel: | Kacey Fickes<br>TBN: 24060684<br>Pamela Bogges |

TBN: 24068092
Assistant District Attorneys
401 W. Belknap
Fort Worth, Texas 76196

Appellee's Counsel
on Appeal:

Debra Windsor
TBN: 00788692
Assistant District Attorney
401 W. Belknap
Fort Worth, Texas 76196

# TABLE OF CONTENTS

*page*

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . .ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .vi

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . .1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . .1

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

REASONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       *Facts*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     The Court of Appeals erred when it held that the trial
       court did not abuse its discretion by admitting the cell
       phone records. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

       A.    *Opinion Below*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

       C.    *Controlling Law*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

       D.    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

       E.    *Harm Analysis*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . .17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

# INDEX OF AUTHORITIES

*Cases*                                                                                                      *page*

*Alexander v. State*,
      88 S.W.3d 772 (Tex. App.-Corpus Christi 2002, pet. ref'd).16, 18

*Casey v. State*,
      215 S.W.3d 870 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . .15

*Gardner  v. State*,
      02-14-00459-CR, 2015 WL 4652718 (Tex. App.–
          Fort Worth, August 6, 2015, no. pet. h.)
                (mem. op., not designated for publication).1-2, 6, 7

*Johnson v. State*,
      967 S.W.2d 410 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . .17

*Jones v. State*,
      119 S.W.3d 766 (Tex. Crim. App. 2003). . . . . . . . . . . . . . . . . . . .18

*King v. State*,
      953 S.W.2d 266 (Tex. Crim. App. 1997). . . . . . . . . . . . . . 16-17, 18

*Layton v. State*,
      280 S.W.3d 235 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . .8, 9

*State v. Mechler*,
      153 S.W.3d 435 (Tex. Crim. App. 2005). . . . . . . . . 9-10, 14, 15, 16

*Montgomery v. State*,
      810 S.W.2d 372 (Tex. Crim. App. 1991) (op. on reh'g). . . 8, 9, 13

*Moreno v. State*,
      858 S.W.2d 453 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . . .9

*Rubalcado v. State*,
      424 S.W.3d 560 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . .7

*Santellan v. State,*
 939 S.W.2d 155 (Tex. Crim. App. 1997). . . . . . . . . . . . . . . . . . . . .9

*Tienda v. State,*
 358 S.W.3d 633 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . .7

**Statutes**

TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). . . . . . . . . . . . . . . . .1

**Court Rules**

TEX. R. APP. P. 44.2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

TEX. R. EVID. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

TEX. R. EVID. 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

TEX. R. EVID. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## STATEMENT REGARDING ORAL ARGUMENT

Because Petitioner does not believe that oral argument will materially assist the Court in its evaluation of matters raised by this pleading, Petitioner respectfully waives oral argument.

## STATEMENT OF THE CASE

On March 4, 2013, Appellant Devin Gardner ("Mr. Gardner" or "Appellant") was indicted for the first degree felony offense of aggravated robbery with a deadly weapon, alleged to have occurred on December 23, 2012. (C.R. 6); *see* TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). A trial was held in the 213th Criminal District Court of Tarrant County, the Honorable Louis Sturns, presiding, on September 15, 16, 17 &18, 2014. (II, III, IV & V R.R. *passim*). The jury found Mr. Gardner guilty as charged in the indictment. (III R.R. 152). Punishment was to the trial court, which sentenced Mr. Gardner to twenty-five (25) years incarceration in the Texas Department of Criminal Justice. (V R.R. 24; C.R. 125). Timely Notice of Appeal was filed on September 18, 2014. (C.R. 131).

## STATEMENT OF PROCEDURAL HISTORY

The opinion of the Second Court of Appeals Affirming Mr. Gardner's conviction was handed down on August 6, 2015. *See Gardner*

1

*v. State*, 02-14-00459-CR, 2015 WL 4652718 (Tex. App.–Fort Worth,

August 6, 2015, no. pet. h.) (mem. op., not designated for publication).

## GROUNDS FOR REVIEW

## GROUND FOR REVIEW ONE

**I.      The Court of Appeals erred when it held that the trial court did not abuse its discretion by admitting the cell phone records.**

## REASONS FOR REVIEW

1.      The decision by the Second Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals.

2.      The Second Court of Appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.

## ARGUMENT

Because this petition is predicated upon error by the Second

Court of Appeals in its review of Mr. Gardner's complaint on appeal,

a review of the pertinent evidence presented and events which

transpired below is in order.

*Facts*

On the night of December 23, 2012, Joe's Food Mart in Benbrook,

Texas, was robbed by three men with bandannas covering their faces,

2

two of whom were armed.[1] (III R.R. 19). The clerk who was working that night at Joe's Food Mart, Hisi Tamraker,[2] was never asked to, nor ever identified Mr. Gardner as one of the robbers at trial. (III R.R. 16-41).

On the night of the robbery, Joe's Food Mart had a surveillance camera system, which recorded the robbery. (III R.R. 25, 30; VI R.R. St. Ex. 11). A clip from that surveillance video was run on the local news. (III R.R. 86). Students at the school Mr. Gardner attended, Milburn Academy, allegedly recognized Mr. Gardner on that news clip, and notified Laura Batik, who was Mr. Gardner's basketball coach at Milburn Academy. (III R.R. 90). Ms. Batik then located the surveillance video on the internet and viewed it for herself. (III R.R. 90). Ms. Batik testified at trial that when she viewed the video on the internet, she recognized Mr. Gardner as one of the robbers from the surveillance video and called Crimestoppers, and eventually the police. (III R.R. 91-92). At trial Ms. Batik identified the person depicted in State's Exhibits

---

[1] There was some evidence admitted at trial that one of the robbers was armed with a weapon that might have been an Uzi machine gun. (III R.R. 65).

[2] Mr. Tamraker was also the owner of Joe's Food Mart. (III R.R. 18).

1

13, 14, 15 and 20 as Mr. Gardner.[3] (III R.R. 93). With the exception of Ms. Batik, no other witness at trial was able to identify Mr. Gardner as one of the robbers depicted in the surveillance video from the Joe's Food Mart robbery.

At trial, the state was allowed to enter into evidence cell phone records purported to belong to telephones used by Mr. Gardner. (III R.R. 106, 108, 112 & 127; VI R.R. St. Exs. 24, 25, 27 & 28).[4] The state presented cell phone records through the testimony of Detective Stephie Phillips of the Fort Worth Police Department. (III R.R. 96). Outside the presence of the jury, defense counsel took Detective Phillips on voir dire, where it was revealed that once Mr. Gardner became a suspect in the Joe's Food Mart robbery, Detective Phillips had discovered that Mr. Gardner–who was on probation in Tarrant County–had given a cell phone number to his probation officer as a number where he could be contacted. (III R.R. 101-02). Detective Phillips then served a search warrant on the service provider of that telephone number, thereby obtaining those records. (III R.R. 97).

---

[3] State's Exhibits 13, 14, 15 and 20 are still photos of one of the robbers which were extracted from one of the surveillance videos. (III R.R. 69-72).

[4] State's Exhibit 24 was admitted for the record only. State's Exhibits 25, 27 and 28 are individual pages excerpted from State's Exhibit 24.

During the voir dire examination, it was revealed that the phone account actually belonged to a Shalonda Benjamin. (III R.R. 98-99). It was further revealed that there were no witnesses who had personal knowledge that Mr. Gardner ever possessed either of the phones attached to the account. (III R.R. 100). Defense counsel objected to the admissibility of the cell phone records on the grounds that they had not been sufficiently connected to Mr. Gardner. (III R.R. 104-05, 108, 109, 112, 113).[5] Back in front of the jury, during the state's examination of Detective Phillips in reference to the cell phone records, it was revealed that the phone number allegedly belonging to Mr. Gardner had sent texts such as: "I'm fina hit a lick," which in Detective Phillips opinion referenced committing a robbery (III R.R. 113-14; VI R.R. St. Ex. 28); that the sender had sent a text indicating that he'd seen himself on the news on a date a few days after the robbery (III R.R. 115); and that Devin Gardner's name was included in the body of some outgoing as well as incoming texts. (III R.R. 126).

The state rested after Detective Phillips' testimony. (III R.R. 127). The defense thereafter rested without presenting any evidence at guilt-

---

[5] The trial court agreed that the objection to the cell phone records had been a running objection. (III R.R. 113).

3

innocence. (III R.R. 129). The jury found Mr. Gardner guilty as charged in the indictment. (III R.R. 152).

## GROUND FOR REVIEW ONE (Restated)

I. **The Court of Appeals erred when it held that the trial court did not abuse its discretion by admitting the cell phone records.**

### A. *Opinion Below*

The Second Court of Appeals correctly identified the abuse of discretion standard of review applicable to the trial court's admission of the contested evidence. *See Gardner*, 2015 WL 4652718 at *1. However, the court then erroneously applied that test.

Additionally, the court of appeals cited factual evidence supporting the admission of the cell phone records which had not been admitted at the time that the trial court made its ruling. The challenged cell phone records came from an account that belonged to an individual named Shalonda Benjamin. Who that person was or her relationship to Mr. Gardner was not explored in any way in the hearing addressing the admission of the records. (III R.R. 96-102). Although an individual named Shalonda Williams testified at punishment that she was Mr. Gardner's mother, she did not testify at guilt-innocence, nor was there any evidence admitted at any time in the trial that Shalonda

4

Williams was previously or also known as Shalonda Benjamin.

In its opinion, the court of appeals stated "[t]he name listed for the number's account was Shalonda Benjamin, *Gardner's mother*, but the subscriber was listed as Gardner." *Gardner*, 2015 WL 4652718 at *1 (emphasis added). By doing so, the court of appeals has *sua sponte* added a critical piece of evidence linking the contested phone records to Mr. Gardner. Restated, the court of appeals either misunderstood the quantum of evidence the state presented at trial in its attempt to prove up the relevance of the records, or mistakenly believed that evidence admitted long after the contested evidentiary ruling could be used to *post hoc* support that ruling. *See Rubalcado v. State*, 424 S.W.3d 560, 567 (Tex. Crim. App. 2014)("When the question is whether evidence was improperly admitted, an appellate court may consider only evidence that was before the trial court at the time of its ruling unless the issue was consensually relitigated at a later point in time.")

B.    *Standard of Review*

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). As long as the trial court's ruling is "within the zone

of reasonable disagreement," an appellate court will not disturb the ruling. *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

### C.   *Controlling Law*

Prior to the admission of the cell phone records, defense counsel objected on Rules 401 and 403 grounds.[6] *See* TEX. R. EVID. 401, 403.

Relevant evidence is that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim.

---

[6]Prior to admission of State's Exhibit 24, counsel stated: "I object because whatever is in there is not probative of anything, but it is - - it - - it can be highly inflammatory." (III R.R. 102).

Before State's Exhibit 25 was admitted, counsel stated: "We object on the basis of the previous grounds. And we also object on the basis of the fact that no witness has tied - - has - - has indicated that either Devin Gardner made these messages or the phone was in his - - his possession at the time it was done." (III R.R. 108).

Prior to the admission of State's Exhibit 27, the following occurred:
MR. FACTOR:  Judge, I'm assuming I have a continuing objection. I - - we've objected to the admission of these records, and we've objected on specific basis, so I'm assuming my objection is continuing.
THE COURT: Your objection is continuing. Overruled. (III R.R. 113).

Before the admission of State's Exhibit 28, counsel stated: "We have no additional objections other than those we've made, but we withdraw our extraneous - - extraneous information objection because the extraneous information has been removed." (III R.R. 127).

6

App. 2009) (citing Tex. R. Evid. 401). It is important, when determining whether evidence is relevant, that courts examine the purpose for which the evidence is being introduced. *Id*. (*citing Moreno v. State*, 858 S.W.2d 453 (Tex. Crim. App. 1993). It is critical that there is a direct or logical connection between the actual evidence and the proposition sought to be proved. *Id*.

Relevant evidence may be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice from its admission. TEX. R. EVID. 403. There is a presumption that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The opponent of the evidence has the burden to demonstrate that its prejudicial effect substantially outweighs its probative value. *Montgomery*, 810 S.W.2d at 377. If the opponent of the evidence lodges an objection based on Rule 403, the trial court must weigh the probative value of the evidence against the potential for unfair prejudice. *Id.* at 389. The criteria to be used in ruling on the objection include the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the evidence; and (4) the

proponent's need for the evidence to prove a fact of consequence. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).

**D.** *Application*

Here, the entirety of the cell phone records were admitted for the record only as State's Exhibit 24. (III R.R. 105). However, State's Exhibits 25, 27, and 28 were admitted for all purposes and are extracts from State's Exhibit 24. (III R.R. 108, 111-13, 128). Although State's Exhibit 24 was admitted only for the record, on direct the State questioned Detective Phillips regarding text messages purported to be from Mr. Gardner which are included in State's Exhibit 24. Specifically, the following transpired:

Q. And on December 17, 2012, does the Defendant engage in a text message conversation with someone about a firearm?

MR. FACTOR: I - - I object, Your Honor, on - - based - - I object to the way the question is - - is formed because this witness has no personal knowledge of who - - who created the text message or who had possession of the - - of the phone at the time the text message was made even if the Court's going to admit the contents of the text message.

THE COURT: You can rephrase the question. Go ahead.

Q. ( By Ms. Boggess) Is there a text message conversation between 817-986-1021 and 682- 203- 5798 about something called an "Uz"?

A. Yes, ma'am.

Q. And does the 817 number discuss having fired something called an

8

Uz?

A. Yes, ma'am.

Q. In what direction does that 817 number talk about having fired something called an Uz?

A. Into the ground.

Q. Does the 817 number also send a text message to that 682 number about fully automatic or fully auto?

A. Yes, ma'am.

Q. In your experience as a robbery detective, can you - - what do you believe these people are talking about?

MR. FACTOR: I object. I object. That's speculation. And this witness hasn't been qualified as an expert.

THE COURT: All right. Overruled. Go ahead.

Q. ( By Ms. Boggess) What do you believe they're talking about?

A. A fully automatic handgun or firearm.

Q. What's an Uz?

A. An Uzi, an Israeli gun, firearm.

Q. What does it look like?

A. It's a small box- like weapon. I believe it's a 9 millimeter. It' s about like this, holds multiple rounds. It's usually fully automatic.

(III R.R. 107-08).

Later, with the same witness:

Q. Detective, on page 17 of the text message phone record on December 23, 2012 at 18: 23: 21, does Devin Gardner's cell phone, that 817 number, send a text message?

A. Yes, ma'am.

Q. What did he send?

A. Do you want it verbatim?

Q. If you can.

A. " I'm fina hit a lick."

MR. FACTOR: Judge, I'm assuming I have a continuing objection. I - - we've objected to the admission of these records, and we've objected on specific basis, so I'm assuming my objection is continuing.

THE COURT: Your objection is continuing. Overruled.

Q. ( By Ms. Boggess) You may continue.

A. "I'm fina hit a lick Y - - WYD."

Q. Have you ever heard the phrase "hit a lick" before?

A. Yes, ma'am. It refers in street vernacular to committing a robbery.

(III R.R. 113-14).

Further in the record, with the same witness:

Q. On December 28, 2012, at - - just one moment - on December 28, 2012, at 12: 46: 49, does that same number, Devin Gardner's 817 number, does that phone number send a text message indicating that, "We done hit a store"?

A. Yes, ma'am.

(III R.R. 114).

Q. Detective, I'm showing you State's Exhibit 28, which is a portion of the documents previously admitted for record purposes only in State's Exhibit 24. Does that document contain the text message we discussed where Devin Gardner says he's going to hit a lick?

A. Yes, ma'am, it is.

(III R.R. 114).

Q. ( By Ms. Boggess) Detective, on December 28, 2012, does the Defendant send a text message indicating that he'd seen himself on the news?

A. Yes, ma'am.

(III R.R. 115).

The State later sought and was granted the admission of State's Exhibit 28 only for the text message from phone number 817-986-1021 sent on December 23, 2012 which stated "im fina hit a lick wyd[.]"

(III R.R. 127).

Unquestionably, the text messages sent from phone number 817-986-1021 are incriminating and damaging to Mr. Gardner, and are without a doubt inflammatory and prejudicial. *See e.g., Montgomery*, 810 S.W.2d at 390 (there is a potential danger that the extraneous bad act may "impress the jury in some irrational but nevertheless indelible way"). But this is only because the State was allowed to represent the messages as being sent from a phone used by Mr. Gardner. Because the

11

State was never able to sufficiently show that Mr. Gardner authored the texts, the texts message evidence was not relevant to the trial of Mr. Gardner. *See* Tex. R. Evid. 401. The State was only able to connect the phone to Mr. Gardner by conjecture and inference. Due to the weakness of the link the Mr. Gardner, the evidence was not relevant to the trial of Mr. Gardner, and was not admissible due to that lack of relevance. *See* TEX. R. EVID. 402.

But the evidence also fails admissibility under Rule 403. Outside the presence of the jury, Detective Phillips testified that she requested the records for 817-986-1021 as that was a number that Mr. Gardner had given to his probation officer as a number where he could be contacted. (III R.R. 101-02). The actual phone account belonged to someone named Shalonda Benjamin. (III R.R. 98). Who Shalonda Benjamin was or how that person was connected to Mr. Gardner was never established at trial. It was however, established at trial that there were multiple phones and numbers attached to the account, and that the State had no witnesses with personal knowledge that 817-986-1021 was ever used by Mr. Gardner. (III R.R. 99-100). Thus, the evidence had little probative value of anything concerning Mr. Gardner. *See Mechler*, 153 S.W.3d at 440. This factor strongly points toward inadmissibility.

Further, the potential the evidence has to impress the jury in an irrational but nevertheless indelible way. *See id.* Most evidence is prejudicial to an opponent. *See Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). "Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Id*. Here, whomever sent the text messages discussed above could be reasonably suspected of firing an Uzi, planning a robbery and then later committing same, and being proud to have seen himself on the news reports regarding the robbery. The strikingly distasteful "evidence" represented by the text messages was very likely to inflame the jury irrationally. This factor tends toward inadmissibility. *See Mechler*, 153 S.W.3d at 440.

Admittedly, the State did not require an unduly extended amount of time to introduce the inflammatory text messages. This factor does not weigh toward inadmissibility. *See id.*

Nor did the State have a great need for the text message evidence. Primarily, the State would have made better use of evidence which was actually connected to Mr. Gardner in a less tenuous manner. Though somewhat incredible, the State already had eyewitness

13

testimony from Laura Batik–a person who knew Mr. Gardner from daily interaction on an extended basis. It cannot be understated how little the text message evidence served to prove a fact of consequence. Mr. Gardner was the defendant. It was reasonable to infer that whomever authored the texts at issue most likely was involved in some criminal activity at some point, though whether that person was Mr. Gardner was not supported. This factor strongly weighs toward inadmissibility. *See id.* The trial court erred in admitting the phone and text message evidence. *Id*.

### E.    *Harm Analysis*

Error in the admission of prejudicial evidence is not one of constitutional dimensions; therefore, appellate courts will disregard the error unless it affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Alexander v. State*, 88 S.W.3d 772, 779 (Tex. App.-Corpus Christi 2002, pet. ref'd) (holding that the admission of a .357 magnum revolver found with the defendant at the time of his arrest had a substantial and injurious effect on the jury where the only other evidence of the defendant's identity as the killer was the questionable testimony of the eye-witness). A substantial right is affected when the error had a substantial and injurious effect or

14

influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citations omitted). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

This was not a case where there was overwhelming evidence of guilt. The only direct evidence connecting Mr. Gardner to the robbery was the testimony of Laura Betik, who claimed she was able to recognize Mr. Gardner from the television broadcast of the surveillance system video recording. Her testimony failed to adequately explain how she was able to identify Mr. Gardner even though his face was covered by a bandanna at all times during the robbery. Without the inflammatory and unfairly prejudicial "evidence" represented by the telephone records, the jury would have been left with the task of evaluating whether Laura Batik's incredible talent at identification was sufficient to find that Mr. Gardner was actually one of the robbers depicted in the video.

The text messages from the phone allegedly belonging to Mr. Gardner had the practical effect of admitting every element of the

robbery–nearly an actual confession if believed by the jury to have come from Mr. Gardner. The Court of Criminal Appeals has opined that a defendant's confession has a profound impact on the jury. *See Jones v. State*, 119 S.W.3d 766, 783 (Tex. Crim. App. 2003). The graphic nature of the admissions detailed in the text messages in all likelihood had an appreciable effect on the jury. *See id.* at 417. In actuality, the jury responded to the vivid, violent, and criminal nature of the texts by convicting whomever it believed sent the texts–in this case Mr. Gardner. The erroneous admission of the phone records had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271. The error therefore affected a substantial right of Mr. Gardner. *See* TEX. R. APP. P. 44.2(b); *see also Alexander*, 88 S.W.3d at 779. Ergo, the court of appeals should have reversed Mr. Gardner's conviction.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Petitioner respectfully prays that this Court grant discretionary review and allow each party to fully brief and argue the issues before the Court of Criminal Appeals, and that upon reviewing the judgment entered below, that

16

this Court reverse the opinion of the Second Court of Appeals and reverse the conviction entered below.

Respectfully submitted,

/s/ Abe Factor
Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Fort Worth, Texas 76117
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorneys for Petitioner
Devin Gardner

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count for the portion of this filing covered by Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure is 4,510.

/s/ Abe Factor
Abe Factor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel for the State's Prosecuting Attorney and the Tarrant County District Attorney by a manner compliant with the Texas Rules of Appellate Procedure, on this 10th day of August, 2015.

/s/ Abe Factor
Abe Factor

17

## APPENDIX

1.      Opinion of the Second Court of Appeals.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00459-CR

DEVIN GARDNER                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1311335D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Devin Gardner appeals his conviction for aggravated robbery with a deadly weapon and 25-year sentence. Because we conclude the trial court did not abuse its discretion by admitting cell-phone records, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

On December 23, 2012, shortly before 8:00 p.m., three men entered a convenience store and forced the owner to the floor at gunpoint. The first man had a red bandana covering the bottom half of his face and was carrying a gun. The second man was wearing a grey, hooded sweatshirt, with the hood up, had a bandana covering the bottom part of his face, and was carrying a long gun. The third man, who appeared to be unarmed, also had a hood over his head and a bandana covering the bottom of his face. The robbers took the store's cash and quickly left.

Soon after the robbery, Laura Betik, a teacher at a charter high school, watched a surveillance video of the robbery after it was shown on a television news program. Betik had been Gardner's basketball coach at school and had tutored him weekly in English. Betik estimated she spent on average of six hours a week with Gardner during basketball season and would see him daily in the halls of the school, which was "very small." Based on the first man's eyebrows, his hair cut, his body build, and his predilection for wearing red,[2] Betik was able to identify the first man on the surveillance video as Gardner.

Based on Betik's identification, police officers obtained a search warrant for cell-phone records for a number Gardner previously had reported to his community-supervision officer as his number. The warrant requested records for

_____

[2]Not only was Gardner generally known to wear red, a picture from his Facebook account showed him wearing a red bandana covering the bottom half of his face.

2

a one-month period surrounding the December 23, 2012 robbery: December 16, 2012 to January 10, 2013. The name listed for the number's account was Shalonda Benjamin, Gardner's mother, but the subscriber was listed as Gardner. Six days before the robbery, texts from the number discussed having and shooting an Uzi, which is a longer, automatic handgun. A text message from the number sent approximately one hour before the robbery stated, "im fina hit a lick," which meant the person sending the text was about to commit a robbery. At trial, the State introduced the text messages into evidence, and Gardner objected on the bases that they had not been sufficiently connected to him such that they were relevant and were unfairly prejudicial. The trial court overruled Gardner's objections and admitted the cell-phone records into evidence.

Gardner's sole argument on appeal is that the cell-phone records were erroneously admitted because they were not relevant and unfairly prejudicial. Gardner's relevance complaint is based on his assertion that the cell-phone number was insufficiently connected to him; thus, the texts were not probative to any fact of consequence. *See* Tex. R. Evid. 401. Although Gardner does not specifically attack whether the records were properly authenticated under rule 901, the issue of authentication necessarily arises when the relevancy of the evidence depends upon its connection to a particular person. *See* Tex. R. Evid. 901(a); *Dering v. State*, No. 11-13-00076-CR, 2015 WL 1472013, at *2 (Tex. App.—Eastland Mar. 26, 2015, no pet.); *Campbell v. State*, 382 S.W.3d 545, 548–49 (Tex. App.—Austin 2012, no pet.). Authentication is a condition

3

precedent to admissibility, and the trial court's determination of admissibility is a preliminary one. *See* Tex. R. Evid. 104, 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). We review the admission of evidence for an abuse of discretion, which mandates deference to a trial court's ruling as long as it was within the zone of reasonable disagreement. *See Tienda*, 358 S.W.3d at 638.

Although "cell phones tend to be personal and user-specific," a "cell-phone number does not necessarily establish the identity of the user at a particular moment in time with the same definitiveness that fingerprints, signatures, photographs, or DNA may establish the identity of the perpetrator of a crime" because "cell phones can be purloined." *Butler v. State*, 459 S.W.3d 595, 601 (Tex. Crim. App. 2015); *Tienda*, 358 S.W.3d at 641. Accordingly, evidence that a cell-phone number is associated with a purported sender, standing alone, may be too attenuated. *See Butler*, 459 S.W.3d at 601. But the test for authenticity, and thus relevance, is a low bar and requires only a threshold showing that would be sufficient to support a finding that the matter in question is what its proponent claims. *Campbell*, 382 S.W.3d at 549. "In cases where a sponsoring witness may testify to an association between a cell-phone number and a purported author [of a text message from that number], other evidence may be available that might bridge the logical gap and permit a proper inference that the purported author sent the message." *Butler*, 459 S.W.3d at 602. For example, the text message's content, considered together with other

4

circumstances, may support a conclusion that a text message was indeed sent by the purported author. *See id.*

> In isolation, a cell phone number is in some respects similar to a return address on a letter. If the return address is the location where the purported author happens to live, it may suggest that the person who lives at the address is the author of the letter. Or it might not— at least on its own, if multiple people happen to live at or have access to that same address. But a letter bearing the return address of a purported author, combined with other circumstances including its appearance and contents, may be sufficient to authenticate a letter as having been sent by the person purported to be its author.

*Id.* at 601–02. A court's initial determination of whether evidence has been sufficiently authenticated to be admissible is dependent on the facts and circumstances of each case. *Tienda*, 358 S.W.3d at 639.

In this case, Gardner reported the cell-phone number as his own number to his community-supervision officer. Gardner was listed as the subscriber for the number. Ten days before the robbery occurred, a text from the number discussed having and shooting a gun similar to one of the guns seen in the surveillance video from the robbery. A text from that same number sent approximately one hour before the robbery showed that the sender was planning to commit a robbery. Betik, who was very familiar with Gardner, was able to positively and confidently identify Gardner as one of the robbers on the surveillance video. We conclude that the cell-phone records were authenticated through circumstantial evidence such that the number could be sufficiently connected to Gardner, rendering the records relevant and admissible under rules 401 and 901. *See* Tex. R. Evid. 401, 901(a); *Butler*, 459 S.W.3d at 603–05;

5

*Jackson v. State*, Nos. 05-14-00274-CR, 05-14-00275-CR, 2015 WL 3797806, at

*3–4 (Tex. App.—Dallas June 17, 2015, no pet. h.) (mem. op., not designated for

publication).  We overrule this portion of Gardner's first point.

Gardner also contends that the cell-phone records, even if relevant, were

unfairly prejudicial and inadmissible.  *See* Tex. R. Evid. 403.  Relevant evidence

is presumed to be more probative than prejudicial, and such evidence should be

excluded under rule 403 only if there is a "clear disparity between the degree of

prejudice of the offered evidence and its probative value."  *Conner v. State*,

67 S.W.3d 192, 202 (Tex. Crim. App. 2001).  It is important to note that the rule

prohibits the admission of evidence carrying a danger of *unfair* prejudice.  Unfair

prejudice justifying exclusion means more than a tendency to injure or prejudice

a defendant, which of course is the point of introducing evidence in the first

place, but refers to an undue tendency to suggest a decision on an improper

basis.  *See Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999);

1 Steven Goode et al., *Texas Practice Series: Guide to the Texas Rules of

Evidence* § 403.2 (3d ed. 2015).  In making a rule 403 determination, a trial court

is to balance many factors including the probative force of the evidence, the

State's need for the evidence, any tendency to suggest a decision on an

improper basis or confuse the jury, and the likelihood that the presentation of the

evidence will consume an inordinate amount of time.  *See Gigliobianco v. State*,

210 S.W.3d 637, 641–42 & n.8 (Tex. Crim. App. 2006).

In this case, Betik's in-court identification of Gardner, while confidently given, was based on a video where the bottom half of the man's face was covered by a bandana, which shows the State's need for the cell-phone records. The State did not spend an inordinate amount of time at trial developing the cell-phone evidence, and there is no record indication that the admission of the records resulted in jury confusion or an improper verdict. We conclude that there was not a clear disparity between the degree of prejudice arising from admission of the cell-phone records and their probative value. Thus, the trial court did not abuse its discretion by admitting the evidence over Gardner's rule 403 objection. *See, e.g.*, *Dodson v. State*, No. 2-08-286-CR, 2010 WL 2889693, at *4–5 (Tex. App.—Fort Worth July 22, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding evidence of defendant's previous convenience-store robbery admitted in subsequent robbery prosecution more probative than prejudicial because prior robbery "assisted the jury in understanding Dodson's identity as one of the robbers in the D & S Food Mart robbery"); *Rogers v. State*, 183 S.W.3d 853, 864–65 (Tex. App.—Tyler 2005, no pet.) (concluding murder victim's phone message left for her boss the day before her death not unduly prejudicial); *accord United States v. Acosta*, 972 F.2d 86, 89 (5th Cir. 1992) (holding evidence of interstate phone calls between defendant and defendant's brother in counterfeiting prosecution not unfairly prejudicial).

We overrule Appellant's sole issue and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

7

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 6, 2015