**Opinion filed March 26, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00076-CR
_____

### TAYLOR DWAYNE DERING, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 010727**

## O P I N I O N

Taylor Dwayne Dering was indicted for aggravated sexual assault of an elderly person. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i) (West Supp. 2014). Appellant pleaded guilty to the offense and elected for the jury to assess punishment. The jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of eighty years and a fine of $8,700. In Appellant's sole issue on appeal, he argues that the trial court erred when it refused to consider social media evidence at the hearing on his motion to transfer venue. We affirm.

*Background Facts*

Appellant does not challenge the sufficiency of the evidence in that he pleaded guilty to the alleged offense. Accordingly, we will only set out a brief summary of the pertinent facts. The alleged offense was committed in April 2012. In November 2012, Appellant pleaded guilty. Prior to voir dire, Appellant filed a motion to transfer venue out of Jones County. *See* TEX. CODE CRIM. PROC. ANN. art. 31.03(a)(1) (West 2006).

At the hearing on the motion to transfer, Appellant introduced nine newspaper clippings detailing the media coverage on the case. Appellant then sought to introduce Facebook posts by third parties about Appellant. The posts were not made on Appellant's Facebook account, nor were they made by Appellant. Instead, the posts were made on a third party's account by other third parties. The sponsoring witness was Appellant's friend. She was neither the owner of the account onto which the posts were made nor the owner of any of the accounts of the alleged posters. The State objected to the admission of the Facebook posts because they were not properly authenticated. The trial court sustained the objection.

Appellant made an offer of proof concerning the Facebook posts in support of the motion to transfer venue. The Facebook posts contained three pages of comments that contained inflammatory remarks about Appellant. There were approximately thirty-one posts by people, most of whom allegedly resided within Jones County. Appellant did not call any of these posters to testify as to the authenticity of the statements. Appellant also did not call the owner of the Facebook account onto which the posts were made. The sponsoring witness responded in the affirmative to the following question: "And have you ever talked to any of these people listed here face to face about things that you had discussed

with them on Facebook under these names?" However, she did not specify what she actually discussed with these people.

The trial court took the motion to transfer venue under advisement. In this regard, the trial court stated that it wanted to listen to the responses elicited during voir dire before ruling on the motion. Voir dire lasted approximately one and one-half days, with extensive questions by the State and Appellant regarding the media exposure in this case. After voir dire concluded, the trial court denied Appellant's motion to transfer venue, stating that Appellant had "failed to show there exists in Jones County so great a prejudice against [him] he could not obtain a fair and impartial trial." The court also stated that Appellant "failed to show that there is a dangerous combination against him instigated by influence of persons by reasons of which he cannot expect a fair trial."

*Analysis*

Appellant's sole issue on appeal is that "[t]he trial court erred by refusing to consider commentary on a social media website as evidence [Appellant] could not obtain a fair and impartial trial in Jones County based on lack of authentication." Appellant is essentially challenging the trial court's ruling on the admissibility of evidence based on whether or not it was properly authenticated. We review a trial court's decision to admit evidence under an abuse of discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). We will uphold an evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006). We also review a trial court's decision as to whether evidence is properly authenticated for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

Under Rule 104(a) of the Texas Rules of Evidence, the question of whether or not to admit evidence at trial is a preliminary question to be decided by the

3

court.  TEX. R. EVID. 104(a); *Tienda*, 358 S.W.3d at 637–38.  The Court of Criminal Appeals stated as follows in *Tienda* regarding the authentication of evidence:

> Rule 901(a) of the Rules of Evidence defines authentication as a "condition precedent" to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims."  Whether the proponent has crossed this threshold as required by Rule 901 is one of the preliminary questions of admissibility contemplated by Rule 104(a).  The trial court should admit proffered evidence "upon, or subject to the introduction of evidence sufficient to support a finding of" authenticity.  The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact-finder—the jury, in a jury trial.  In performing its Rule 104 gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic.  The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic.

358 S.W.3d at 638 (footnotes omitted).

The court dealt with the authentication of social media evidence in *Tienda*. *Id.* at 641.  As noted by the court, the authentication of social media evidence presents a myriad of concerns.  *Id.*  For example, social networking websites, such as Facebook and MySpace,[1] allow users to establish an online account, create a profile, and then invite others to access that profile as a "friend."  *See Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 845–46 (W.D. Tex. 2007); *see also Griffin v. State*, 19 A.3d 415, 421 n.9 (Md. 2011) (noting that MySpace and Facebook work in the same way).  Accordingly, with respect to identity, Facebook presents an authentication concern that is twofold.  First, because anyone can establish a fictitious profile under any name, the person viewing the profile has no way of knowing whether the profile is legitimate.  *Griffin*, 19 A.3d at 421.  Second,

---

[1]*Tienda* addressed the authentication of MySpace posts.  *Id.* at 642.

4

because a person may gain access to another person's account by obtaining the user's name and password, the person viewing communications on or from an account profile cannot be certain that the author is in fact the profile owner. *Id.* Thus, the fact that an electronic communication on its face purports to originate from a certain person's social networking account is generally insufficient, standing alone, to authenticate that person as the author of the communication. *Tienda*, 358 S.W.3d at 642.

*Tienda* allows the admission of MySpace posts when there is circumstantial evidence that sufficiently links the purported author "so as to justify submission to the jury for its ultimate determination of authenticity." *Id.* at 639. This circumstantial evidence may include photos of the purported author with unique characteristics, references to specific details only the purported author would know, or messages referring to the alleged incident. *Id.* at 645.

However, *Tienda* and its progeny deal with cases involving authentication of social media and electronic evidence that emanates from the defendant as the purported author. *Id.* at 642 (MySpace posts by the defendant); *see, e.g.*, *Butler v. State*, No. 13-12-00608-CR, 2014 WL 1272232, at *2 (Tex. App.—Corpus Christi Mar. 27, 2014, pet. granted) (mem. op., not designated for publication) (text messages between defendant and victim); *Aekins v. State*, No. 04-13-00064-CR, 2013 WL 5948188, at *5 (Tex. App.—San Antonio Nov. 6, 2013) (mem. op., not designated for publication) (text messages sent by defendant), *aff'd*, 447 S.W.3d 270 (Tex. Crim. App. 2014); *Miller v. State*, No. 11-11-00350-CR, 2013 WL 5636375, at *2–3 (Tex. App.—Eastland Oct. 10, 2013, pet. ref'd) (mem. op., not designated for publication) (defendant's MySpace profile); *Rene v. State*, 376 S.W.3d 302, 304 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (photographs of defendant on defendant's MySpace profile); *Campbell v. State*, 382 S.W.3d 545, 548 (Tex. App.—Austin 2012, no pet.) (Facebook messages sent by defendant);

*accord Smith v. State*, 136 So. 3d 424, 432–33 (Miss. 2014) (Facebook messages from defendant); *Parker v. State*, 85 A.3d 682, 683–84 (Del. 2014) (Facebook entries originated from defendant's Facebook account). Other courts have dealt with the authentication of electronic evidence prior to *Tienda*. *See Tienda*, 358 S.W.3d at 639 n.28 (citing cases dealing with emails, internet chat rooms, text messages, and instant messages). Again, these cases involve communication with the defendant as the purported author.

These cases are distinguishable from our facts. Here, the Facebook posts were not made by Appellant or sent by Appellant to anyone. In fact, Appellant had nothing to do with the creation or the content of the Facebook posts other than serve as the subject of the posts. The original post was created by a third party who did not testify during any of the proceedings. The sponsoring witness recognized the account owner's name and some, but not all, of the posters' names. The witness had talked to some of the posters in person but did not say that they specifically talked about what they posted on Facebook. There was no evidence of the authenticity of who the purported author was of any of the Facebook posts. All that Appellant offered in terms of authenticity were the names and photos as shown on the accounts of the owner and posters. Without more, this evidence is insufficient to support a finding of authenticity. *See Tienda*, 358 S.W.3d at 646–47 (quoting *Griffin*[, 19 A.3d at 424], to conclude that more circumstantial evidence is necessary to properly authenticate social media posts).

Moreover, even if the trial court erred by not admitting the Facebook posts, the exclusion did not constitute harmful error. Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule 44.2(b) of the Texas Rules of Appellate Procedure if the trial court's ruling merely offends the rules of evidence. *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim.

App. 2001).  Nonconstitutional error requires reversal only if it affects the substantial rights of the accused.  Tex. R. App. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011).  When evaluating harm from nonconstitutional error flowing from the exclusion or admission of relevant evidence, we examine the record as a whole.  *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

The trial court withheld its ruling on the motion to transfer venue until after the completion of voir dire.  Over four hundred prospective jurors were summoned for the trial.  One hundred and six veniremembers were seated for the voir dire examination.  Voir dire lasted approximately one and one-half days.  There were extensive questions by both the State and Appellant regarding pretrial publicity and media exposure.  Only two potential jurors were struck who "voiced any real recollection of any type of [media] exposure."  Thus, the media exposure had little to no effect on the jury pool as a whole.  Accordingly, the exclusion of the Facebook posts did not affect Appellant's substantial rights.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE

March 26, 2015

Publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.