**Opinion filed September 29, 2017**



In The

# Eleventh Court of Appeals

_____

## No. 11-16-00043-CR

_____

## TIMOTHY LEE MCKENZIE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**
**Shackelford County, Texas**
**Trial Court Cause No. 2014F098**

## M E M O R A N D U M   O P I N I O N

The jury convicted Timothy Lee McKenzie of continuous sexual abuse of a young child. The trial court assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In five issues on appeal, Appellant contends that the trial court abused its discretion in (1) refusing to admit the entire SANE report into evidence, (2) refusing to admit the DNA report

into evidence, (3) refusing to admit evidence of alleged prior false allegations by the victim, (4) refusing to admit a turkey baster into evidence, and (5) permitting evidence of an extraneous offense committed by Appellant. We affirm.

*Background Facts*

The victim, A.V., is Appellant's daughter. A.V. was born in 2001. According to A.V., Appellant had been molesting her since she was eight years old. On one occasion, Appellant crawled into bed with A.V. and attempted to unbutton A.V.'s pants. A.V. told Appellant "no," and Appellant promised that the abuse would stop. On another occasion, Appellant digitally penetrated A.V.'s "female genitalia" on the living room couch. The abuse continued until May 2014.

On May 7, 2014, A.V. was living with Appellant at Appellant's grandmother's house in Albany. A.V. told her family that she was going to attend church that evening. Instead of attending church, A.V. met with friends. Appellant and A.V.'s stepbrother, D.C., found her and brought her home, and her family became angry with her for breaking the rules. Ten or fifteen minutes later, Appellant drove A.V. to Albany Lake. During the trip to the lake, Appellant and A.V. were alone in Appellant's vehicle. A.V. testified that Appellant parked near the lake, climbed on top of her, removed her clothing, and "put his male genitalia inside [her] female genitalia."

Later that night, A.V. ran away from home and went to a motel where her male friend, J.S., lived. The following morning, A.V.'s stepmother, Jessica McKenzie,[1] retrieved A.V. from J.S.'s motel room and took her back home, where there was "a lot of screaming and yelling." After approximately twenty minutes, A.V. again ran away from home and became lost. At around 9:00 a.m., A.V. arrived at a welding shop owned by Danny Peacock. Peacock took A.V. to school.

---

[1]We will refer to Jessica McKenzie as "McKenzie" in this opinion.

2

Later that morning, A.V.'s maternal grandmother, Diane Sheffield, received a phone call that A.V. had run away from home and was found at school. Sheffield picked A.V. up from school and took her to Abilene Behavioral Health Clinic (ABHC), where A.V. had previously been receiving treatment. During the trip to ABHC, A.V. told Sheffield that Appellant had raped her.

Suzie Striegler, a sexual assault nurse examiner (SANE), performed a SANE examination of A.V. Striegler testified from the SANE report, and page nine of the report was admitted as State's Exhibit No. Three. A.V. told Striegler that Appellant had sexually assaulted her but that she did not remember whether or not Appellant had penetrated her. Striegler testified that there was redness around A.V.'s vagina that could be consistent with penetration. Striegler collected vaginal swabs from A.V. to test for DNA. Carolyn Van Winkle performed a scientific analysis of the DNA swabs collected by Striegler. Van Winkle testified that DNA found on a vaginal swab and on A.V.'s panties matched Appellant's DNA profile.

Appellant's defensive theory was that A.V. was lying about the May 7 incident at Albany Lake and that she had used a turkey baster to plant Appellant's DNA in her vagina. Frances Hohenstein is Appellant's grandmother. Hohenstein testified that, prior to May 7, she and A.V. had had a conversation about Hohenstein's turkey baster. In August 2014, three months after the incident at Albany Lake, Hohenstein found a turkey baster hidden in the bathroom that she shared with A.V.

Appellant testified in his own defense during the guilt/innocence phase of trial. Appellant denied ever sexually assaulting A.V. Instead, he stated that the purpose of the trip to Albany Lake was to allow everyone in the family time to calm down and to have a conversation with A.V. about her behavior. According to Appellant, A.V. was defiant throughout the car ride, which made Appellant angry, so Appellant pulled the car over and spanked her.

*Analysis*

In his first four issues, Appellant contends that the trial court abused its discretion and denied his "interrelated" Sixth Amendment rights to effectively cross-examine witnesses and to present a defense when it sustained the State's objections to four items of evidence that he sought to offer at trial. Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); *see Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule."). As noted by the Court of Criminal Appeals in *Hammer*, there are two scenarios in which rulings excluding a defendant's evidence might rise to the level of a constitutional violation: (1) a state evidentiary rule that categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence that is vital to his defense and (2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 561 n.8 (quoting *Potier v. State*, 68 S.W.3d 657, 663–65 (Tex. Crim. App. 2002)). Appellant's first four issues constitute challenges under the "second category" because he asserts that the trial court made erroneous rulings under the rules of evidence that precluded him from effectively presenting his defensive theory. *See id.*

In his first and second issues, Appellant contends that the trial court abused its discretion when it refused to admit the entire SANE report and the DNA report. Appellant asserts that the exclusion of this evidence under Rule 412 of the Texas Rules of Evidence constituted error. We disagree.

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold an evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670–71 (Tex. App.—Eastland 2015, no pet.).

Evidence regarding the sexual history or promiscuity of a sexual assault victim is generally inadmissible. TEX. R. EVID. 412(a); *Hammer*, 296 S.W.3d at 556. However, specific instances of past sexual behavior are admissible if "necessary to rebut or explain scientific or medical evidence offered by the prosecutor." TEX. R. EVID. 412(b)(2)(A); *Miles v. State*, 61 S.W.3d 682, 686–87 (Tex. App.— Houston [1st Dist.] 2001, pet. ref'd).[2]

Striegler testified that A.V. had redness inside her vagina that could be consistent with penetration. During her testimony, Striegler drew a diagram on a white board, indicating where the redness was located. The State offered Striegler's white board diagram into evidence. However, the trial court expressed concern that the drawing could not be preserved for the jury's later use. In response, the State offered page nine of the SANE report into evidence, which contained the same diagram as that drawn by Striegler on the white board. The trial court admitted page nine of the SANE report into evidence.

Appellant then offered the entire SANE report into evidence, arguing that it was necessary to explain the medical or scientific evidence under Rule 412 and that

---

[2]Rule 412(b)(3) also provides a requirement that the probative value of the proffered sexual history evidence outweighs the danger of unfair prejudice. Neither the parties nor the trial court addressed this requirement of the rule. Accordingly, we do not reach it.

it fell within the rule of optional completeness. *See* TEX. R. EVID. 107, 412(b)(2)(A). The SANE report contained a statement from A.V. indicating that she had had sex with J.S. in the motel on the night of May 7. Appellant argued that this information was necessary to explain the redness on A.V.'s vagina. The trial court did not allow the SANE report to be admitted into evidence. However, the trial court did allow Appellant to ask Striegler, "Now, based upon your examination and your -- the history that you took, do you have any knowledge that would lead you to believe that more than one person could have caused that redness?" Striegler responded, "Yes, sir."

Van Winkle testified that DNA collected from A.V. matched Appellant's DNA profile. In a subsequent hearing outside the presence of the jury, Van Winkle testified that the DNA swabs collected from A.V. contained three separate DNA contributors, including J.S.'s DNA profile. The trial court denied Appellant's request to admit this testimony into evidence, relying on Rule 412. On cross-examination in front of the jury, Van Winkle testified that she could not say how Appellant's DNA came to be found on the vaginal swabs or the panties.

At the beginning of Appellant's case-in-chief, he reoffered both the entire SANE report and the DNA report into evidence under Rule 412 and his "right to present evidence in his own defense." The trial court denied Appellant's request and refused to admit either the entire SANE report or the DNA report into evidence.

On appeal, Appellant contends that the entire SANE report and the DNA report were necessary to rebut or explain the State's medical evidence. We agree with Appellant's contention that the entire SANE report and the DNA report rebutted or explained the State's medical evidence. However, we disagree that these matters were *necessary* to rebut or explain the State's medical evidence as required by Rule 412(b)(2)(A).

The State relied on two pieces of scientific or medical evidence to convict Appellant: (1) evidence that Appellant's DNA profile was found in A.V.'s vagina and on her panties and (2) evidence that there was redness around A.V.'s vagina. We focus our attention on the evidence of redness noted by Striegler.[3] Appellant attempted to explain the redness by offering evidence that A.V. had had sex with J.S. on the night of May 7, less than twenty-four hours prior to her SANE exam. A.V.'s statement in the SANE report that she had had sex with J.S. on the night of May 7 would have provided an explanation for the State's medical evidence that there was redness around A.V.'s vagina on May 8. Furthermore, evidence that there was DNA from another male on the vaginal swabs would have rebutted or explained the evidence of redness.

We disagree that the entire SANE report and the DNA report were necessary because the trial court permitted Appellant's counsel to ask Striegler "based upon your examination and your -- the history that you took, do you have any knowledge that would lead you to believe that more than one person could have caused that redness?" By permitting counsel to obtain an affirmative response to this question, the trial court struck a balance between Rule 412's general prohibition against evidence of the victim's previous sexual conduct and the exception provided for evidence necessary to rebut or explain scientific evidence. Accordingly, we cannot conclude that the trial court abused its discretion by refusing to admit the entire SANE report and the DNA report into evidence.

Moreover, even if the trial court erred in denying the admission of the entire SANE report and the DNA report, we conclude that the error was harmless. Appellant contends that the exclusion of the SANE and DNA reports was

---

[3]Appellant attempted to explain the DNA evidence with testimony from Hohenstein implying that A.V. used a turkey baster to plant Appellant's DNA in her vagina.

7

constitutional error because it deprived him of his Sixth Amendment right to present a defense. The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006); *Crane v. Kentucky*, 476 U.S. 683 (1986). However, the erroneous exclusion of evidence generally constitutes nonconstitutional error and is reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Potier*, 68 S.W.3d at 663 ("Erroneous evidentiary rulings rarely rise to the level of denying fundamental constitutional rights to present a meaningful defense."). The improper exclusion of evidence may only establish a constitutional violation when the trial court erroneously excludes relevant evidence that is a vital portion of the case and effectively precludes the defendant from presenting a defense. *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002); *Potier*, 68 S.W.3d at 659–62. In that situation, the more stringent harm standard in Rule 44.2(a) is applied. TEX. R. APP. P. 44.2(a); *Simpson v. State*, 119 S.W.3d 262, 269 n.5 (Tex. Crim. App. 2003).

Appellant was not precluded from presenting his defense to Striegler's finding of redness. Appellant questioned Striegler about her belief that, based on the history that she took from A.V., more than one person could have caused the redness on A.V.'s vagina. Because Appellant was allowed to present evidence in support of his defensive theory rebutting the redness finding, we cannot say that the trial court's exclusion of the SANE and DNA reports was constitutional error. Accordingly, any error would be subject to a nonconstitutional harm analysis under Rule 44.2(b). *See Potier*, 68 S.W.3d at 666; *see also* TEX. R. APP. P. 44.2(b).

Pursuant to Rule 44.2(b), we must disregard nonconstitutional error that does not affect a defendant's "substantial rights," i.e., if upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious

effect or influence in determining the jury's verdict. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Here, there was other indirect evidence in front of the jury that A.V. had sex with J.S. on the night of May 7. As we have previously noted, Striegler testified that, based on the history she took from A.V., she believed that more than one person could have caused the redness on A.V.'s vagina. Further, A.V. testified that, on the night that Appellant sexually assaulted her, she ran away to J.S.'s motel room. McKenzie testified that, the next morning, she found A.V. in bed with J.S. in his motel room. Error in the exclusion of evidence is rendered harmless where the same evidence is admitted elsewhere without objection. *See, e.g.*, *Preston v. State*, 481 S.W.2d 408, 409 (Tex. Crim. App. 1972) ("This Court has consistently held reversal is not required by exclusion of evidence where same testimony was later admitted without objection."); *Montgomery v. State*, 383 S.W.3d 722, 727 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Although the trial court may have initially excluded this evidence, the later admission renders harmless any possible error."). We overrule Appellant's first and second issues.

In his third issue, Appellant contends that the trial court abused its discretion and denied Appellant his Sixth Amendment right to present a defense when it refused to admit evidence of A.V.'s allegedly prior false allegations of sexual abuse. Appellant further contends that the exclusion of this evidence deprived him of due process of law and was admissible under Texas Rule of Evidence 412.

Prior to opening statements, the trial court held a hearing on the State's oral motion in limine regarding prior false allegations of sexual abuse by A.V. At the hearing, Appellant's trial counsel stated, "[W]e intend to introduce evidence that she has made two false outcries previously." Counsel argued that A.V. had made "[o]utcries of sexual molestation by two different individuals, both of which she has recanted on and said they were untruthful." He continued, "There was an outcry

against [D.C.]. We've got evidence of that. There was an outcry against [L.M.] and she then later denied that those were true." Counsel argued that the prior false allegations were admissible because "I think this goes to credibility of the witness." The trial court granted the State's motion in limine.

Later during trial, the trial court held a hearing outside the presence of the jury regarding the prior false allegations. The trial court instructed Appellant's trial counsel to "make your offer of Defendant's Exhibit 3 In Camera." Appellant's counsel replied, "My specific offer is to show that an outcry of prior sexual molestation was made."[4] The State objected to the admission of this evidence under Texas Rule of Evidence 608(b), and the trial court sustained the State's objection. *See* TEX. R. EVID 608(b). The trial court then asked Appellant's counsel, "Does that complete your proffer?" Appellant's counsel responded, "That's it."

The Court of Criminal Appeals in *Hammer* addressed the admission of evidence of prior false accusations in "sexual assaultive cases." 296 S.W.3d at 564. "There is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals 'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.'" *Id.* at 562 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). A defendant does not have "an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses." *Id.* However, the exposure of a witness's motivation in testifying is proper to show the witness's possible motives, bias, and prejudice. *Id.* at 562–63.

Rule 608(b) provides that "a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." Unlike some jurisdictions, Texas

---

[4]As noted, Appellant tendered an in camera exhibit in support of his contention. It consists of a series of text messages discussing an allegation of sexual assault against L.M.

has not created a per se exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of a sex-offense complainant's prior false allegations of abuse or molestation. *Id.* at 564 (citing *Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000)). Thus, evidence of prior false allegations are not admissible if offered to attack the victim's credibility in general. *Id.* at 565. "If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules." *Id.*

The record does not reflect that Appellant had any purpose for offering the prior false allegations other than to attack A.V.'s credibility in general. As noted in *Hammer*, this is not a proper purpose for admitting a prior false allegation. "A sexual assault complainant is not a volunteer for an exercise in character assassination." *Id.* at 564. Accordingly, the trial court did not abuse its discretion in denying admission of the prior false allegations. We overrule Appellant's third issue.

In his fourth issue, Appellant contends that the trial court abused its discretion and denied Appellant his Sixth Amendment right to present a defense when it refused to admit the turkey baster allegedly found in A.V.'s bathroom as an item of physical evidence. Both Hohenstein and McKenzie identified the turkey baster as the one that was hidden in A.V.'s bathroom. Appellant attempted to offer the turkey baster into evidence as Defense Exhibit No. 11 during McKenzie's testimony. The State objected on the ground that McKenzie could not properly authenticate it. Appellant responded to the State's authentication objection, but he did not raise a Sixth Amendment claim in seeking the admission of the turkey baster.

As a prerequisite to presenting a complaint for appellate review, the record must show that the appealing party "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the

complaint." TEX. R. APP. P. 33.1(a)(1)(A). To complain on appeal about the trial court's exclusion of evidence, the proponent "must have told the judge why the evidence was admissible" and must have brought to the trial court's attention the same complaint that is being made on appeal. *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).

Because Appellant did not explain to the trial court why the exclusion of the turkey baster infringed on his right to present a defense, he has not preserved this issue for review. *See Reyna*, 168 S.W.3d at 177. Furthermore, the record contains numerous references to the turkey baster and Appellant's contention that A.V. used it to plant his DNA in her vagina. Accordingly, the record does not support a showing of harm from the trial court's exclusion of the turkey baster as an item of physical evidence. We overrule Appellant's fourth issue.

In his fifth issue, Appellant contends that the trial court abused its discretion by admitting evidence that Appellant committed the extraneous offense of online solicitation of a minor because the State failed to prove that Appellant committed the offense beyond a reasonable doubt and because it was irrelevant. Appellant further contends that a ruling on this issue should await a final decision by the Court of Criminal Appeals in *Leax v. State*, No. PD-0517-16. *See Leax v. State*, No. 09-14-00452-CR, 2016 WL 1468042 (Tex. App.—Beaumont Apr. 13, 2016, pet. granted) (mem. op., not designated for publication).

Taylor County Deputy Sherriff John Graham testified during the guilt/innocence phase that he arrested Appellant in October 2013 for online solicitation of a minor in Abilene. Deputy Graham created a Craig's List advertisement, posing as a thirteen-year-old prostitute named "Nikki." Appellant responded to the advertisement. Deputy Graham and Appellant exchanged numerous sexually explicit text messages, which included two pictures. During his communication with Deputy Graham, Appellant began to question whether "Nikki"

was a real person and insisted on setting up a meeting. Posing as Nikki, Deputy Graham agreed to meet with Appellant. When Appellant arrived at the meeting location, investigators arrested him.

We will first address Appellant's assertion that the trial court abused its discretion in admitting testimony regarding the extraneous offense because it "had no relevance apart from the tendency to prove character conformity." Evidence of an individual's bad character is generally not admissible to show that he acted in conformity therewith. TEX. R. EVID. 404; *Montgomery v. State*, 810 S.W.2d 372, 386–88 (Tex. Crim. App. 1991). However, under Article 38.37, section 2(b) of the Texas Code of Criminal Procedure, in trials for certain offenses, including continuous sexual abuse of a young child, "evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted . . . for any bearing the evidence has on relevant matters, *including the character of the defendant and acts performed in conformity with that character*." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1), (b) (West Supp. 2016) (emphasis added). Subsection (a)(1) enumerates the extraneous offenses that may be offered pursuant to section 2(b) and includes online solicitation of a minor. *Id.* § 2(a)(1)(F). Therefore, under Article 38.37, the State was entitled to offer evidence that Appellant committed the extraneous offense of online solicitation of a minor in order to show Appellant's bad character and that he acted in conformity with that character.

Additionally, Appellant asserts that the State failed to prove beyond a reasonable doubt that he committed the extraneous offense of online solicitation of a minor.

> Before evidence described by Section 2 may be introduced, the trial judge must:
> > (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury

that the defendant committed the separate offense beyond a reasonable doubt; and

(2) conduct a hearing out of the presence of the jury for that purpose.

CRIM. PROC. art. 38.37, § 2-a. A trial court's ruling on the admissibility of extraneous offenses under Article 38.37, section 2 is reviewed under an abuse-of-discretion standard. *Bradshaw v. State*, 466 S.W.3d 875, 878 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011)).

Under Section 33.021(c) of the Texas Penal Code, a person commits an offense if he "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person." TEX. PENAL CODE ANN. § 33.021(c) (West 2016). At the time Appellant was arrested for this offense, the statute defined "minor" as "an individual who represents himself or herself to be younger than 17 years of age; or an individual whom the actor believes to be younger than 17 years of age." Former TEX. PENAL CODE § 33.021(a)(1) (2007).

At the Article 38.37 hearing, Deputy Graham testified that, in August 2013, he created a Craig's List advertisement, posing as a teenage female prostitute. Appellant initiated communication with Deputy Graham in response to the advertisement. Deputy Graham reminded Appellant that the advertisement was for a thirteen-year-old prostitute. Appellant responded by asking for a picture of the girl. Deputy Graham sent Appellant a picture, and Appellant responded that the girl had on too many clothes. Appellant sent Deputy Graham a nude image of himself.

14

Appellant asked for additional pictures of the girl, but Deputy Graham refused. Appellant asked Deputy Graham, "[S]o for the right price I can f--k you?"

Upon learning that the girl was being prostituted by her stepfather, Appellant responded, "tell him to name his price." Appellant then began asking where the girl lived and indicated that he wanted to drive by the girl's house to confirm that she was a real person. Posing as the girl, Deputy Graham agreed to meet with Appellant in Abilene. Appellant appeared anxious to "hurry up and to be able to meet" because he had to return to work. Investigators met Appellant at the meeting place in Abilene and arrested him.

When taken in the light most favorable to the trial court's ruling, the evidence showed that Appellant communicated via text message with an individual representing himself to be under the age of seventeen with the intent that the minor will engage in sexual intercourse with Appellant. We conclude that the trial court did not abuse its discretion in determining that the evidence of the extraneous offense was adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt.

Lastly, Appellant contends that a final ruling on this issue should await the Court of Criminal Appeals' decision in *Leax v. State*, No. PD-0517-16. In *Leax*, the defendant is challenging the constitutionality of subsection (c) of the online solicitation of a minor statute. *See* Petition for Discretionary Review, *Leax*, No. PD-0517-16. Appellant contends that, if section 33.021(c) is declared unconstitutional, then "it is beyond dispute [that] Appellant will be entitled to a new trial." We note, however, that the Court of Criminal Appeals recently held that section 33.021(c) is not unconstitutionally overbroad. *See Ex parte Ingram*, No. PD-0578-16, 2017 WL 2799980, at *9 (Tex. Crim. App. June 28, 2017). Therefore, we decline Appellant's invitation to postpone disposition of his appeal pending the Court of Criminal Appeals' decision in *Leax*. We overrule Appellant's fifth issue.

15

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


September 29, 2017

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.