**Opinion filed February 9, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00157-CR

_____

## WILLIAM BRADY ROE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. CR04494**

## O P I N I O N

The jury convicted William Brady Roe of indecency with a child by contact, and it assessed his punishment at confinement for a term of twenty years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2019). Appellant challenges his conviction in three issues. We affirm.

*Background Facts*

The alleged victim in this case is S.R., Appellant's daughter. She was eighteen at the time of trial. The indictment alleged that Appellant, with the intent to arouse or gratify his sexual desire, engaged in sexual contact with S.R. by touching her genitals "with a manufactured sexual device" when she was a child younger than seventeen.

Linda McGinnis is the technology director at the high school that S.R. attended. The school district has a software program known as "Bark" that monitors students' computer activities on school computers. McGinnis receives a weekly report from the Bark program that alerts her to student computer activities that may be of concern to school officials. On October 18, 2019, the Bark report detected a document written by S.R. that it labeled with a "severe" level of concern. The document was titled "What I will never say," and it contained eight pages that detailed disturbing allegations made by S.R. about Appellant.

After McGinnis read the document, she provided it to the school counselor, Laura Hermesmeyer. Hermesmeyer then alerted the principals at the school and the school resource officer, Officer Elda McDonald of the Comanche Police Department, of the document. Hermesmeyer, Officer McDonald, and the school principals met with S.R. that afternoon. Officer McDonald testified that the purpose of the meeting was to ask S.R. if the allegations in the document were true. After S.R. indicated that the matters in the document were true, Officer McDonald continued the investigation further by alerting other officers and S.R.'s mother.

S.R. testified that she began living with Appellant when she was thirteen when he moved out of the house that he shared with her mother. She testified that he routinely provided her with alcohol that they would drink together to the point that

S.R. would become drunk. She described an incident when he had her try to perform a handstand while she was only wearing panties and a large t-shirt.

She testified about another incident when she and Appellant were sitting on the back porch of her mother's house drinking alcohol and smoking cigarettes. Appellant told her to take off her shirt, which she did, stripping to her panties, at which point she performed a lap dance for Appellant. Appellant asked S.R. to touch her breast, but she refused. She and Appellant also walked on a side road while she was partially clothed. She estimated that she was thirteen or fourteen when this event occurred.

S.R. testified that Appellant was a truck driver and that she would sometimes accompany him in his truck. S.R. and Appellant would sleep together in the truck, and sometimes they would sleep together in his bed at his house—during which times they would cuddle. S.R. testified that most of the episodes involving Appellant occurred at night after he had been drinking. Sometimes Appellant would provide S.R. with marihuana that they would use together. S.R. also testified that sometimes she and Appellant would go to "XXX shops."

The incident giving rise to the offense for which Appellant was convicted occurred after S.R. and Appellant went to a Spencer's store and purchased a vibrator. S.R. testified as follows:

> And on our way back, he asked me to use it. And I told him no. So he opened it and he put it between my thighs and he like turned it on and he was using it on me, but it wasn't in me. So it was just next to my thighs.

She further testified that he put the vibrator against her genitalia for "a few seconds." S.R. stated that Appellant asked her if she enjoyed it, to which she replied, "no, it hurt." S.R. also testified that Appellant handed the vibrator to her and told her to use it, but that she declined.

3

S.R. also testified about other times that Appellant purchased other sex toys for her, including a whip, other vibrators, as well as sex magazines. She testified that they whipped each other with the whip and looked at the magazines, which she described as "bondage, whips, ropes, chains, like hardcore." S.R. also testified that she watched porn with Appellant, doing so while topless. Appellant also offered to pleasure S.R. for money, and he drove her around one evening when she performed oral sex on a boy.

S.R. testified that she did not know why she wrote the document found by the Bark program and that she just started writing it one day. She did not intend for anyone to find it. S.R. also testified that she had not told anyone else about the matters covered in it other than the drinking with Appellant. Assistant Principal Angela Askew and Hermesmeyer testified that S.R. was sad and upset at the initial meeting when they talked to her about the document. S.R. testified that she "shut down" at the meeting.

Investigator Ernest Hastings of the Comanche Police Department met with Appellant on the afternoon of the meeting with S.R. Investigator Hastings's recorded interview of Appellant was played at trial. During the interview, Appellant denied doing anything with S.R. that was "a sexual thing." He also indicated that he provided S.R. with alcohol, marihuana, and vibrators because he preferred that she learn about those things from him.

Investigator Hastings also obtained consent from Appellant to search his home and his cell phones. Officers found a whip, handcuffs, several vibrators, and two "fetish" magazines in S.R.'s bedroom inside Appellant's home. A search of one of Appellant's cell phones revealed that Appellant had viewed materials described as "incest porn" and "daddy/daughter porn."

4

*Analysis*

*Sexual Contact Can Occur Through the Use of an Object to Touch a Minor*

Appellant presents three issues on appeal. His first two issues are related because they are based on the same argument—that touching a minor's genitals with an object cannot constitute indecency with a child by contact. As noted previously, the indictment alleged that Appellant engaged in sexual contact with S.R. by touching her genitals "with a manufactured sexual device" when she was a child younger than seventeen. In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction. In his second issue, Appellant contends that the indictment was void because it failed to allege an offense.

We first address Appellant's second issue because it was not preserved for appellate review. "If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding." TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *see Jenkins v. State*, 592 S.W.3d 894, 902 (Tex. Crim. App. 2018). This has been the law in Texas since 1985, when Article 1.14(b) was amended to require a defendant to object to substantive defects in the indictment prior to trial. *Studer v. State*, 799 S.W.2d 263, 266–72 (Tex. Crim. App. 1990) (discussing legislative history of amendment); *see also Walker v. State*, 594 S.W.3d 330, 339 (Tex. Crim. App. 2020) ("Prior to 1985, a defect in the substance of an indictment was said to be 'fundamental error' because such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void."). Accordingly, an alleged defect in an indictment no longer constitutes fundamental error, and it must be objected to prior to trial in order to preserve the complaint for

5

appellate review. *See* Crim. Proc. art. 1.14; *Walker*, 594 S.W.3d at 339; *Studer*, 799 S.W.2d at 267; *Thompson v. State*, No. 03-20-00080-CR, 2021 WL 1418987, at *6 (Tex. App.—Austin Apr. 15, 2021, pet. ref'd) (mem. op., not designated for publication). Thus, Appellant has not preserved the second issue for appellate review.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240

(Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of indecency with a child by contact if he "engages in sexual contact with [a] child" younger than seventeen years of age. PENAL § 21.11(a)(1). "Sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," if the act is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1).

Appellant contends that sexual contact could not have occurred as alleged because the statute "does not include using an object." Indecency with a child is a conduct-oriented offense that criminalizes three separate types of conduct—touching the anus, touching the breast, and touching the genitals of a child with the requisite mental state. *Pizzo v. State*, 235 S.W.3d 711, 719 (Tex. Crim. App. 2007). The definition of "sexual contact" provides that it occurs by "any touching." PENAL § 21.11(c)(1). Accordingly, the statutory definition of sexual contact does not preclude it from occurring by the use of an object. The focus of the definition of sexual contact is "*where* the touching occurred" rather than "*how* the touching was effectuated." *See Pizzo*, 235 S.W.3d at 717. How the touching was effectuated is not an essential element of the offense. *State v. Shuck*, 222 S.W.3d 113, 116 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Hilliard v. State*, 652 S.W.2d 602, 605 (Tex. App.—Austin 1983, pet. ref'd, untimely filed).

We addressed a similar contention in *Tienda v. State*. 479 S.W.3d 863, 873–74 (Tex. App.—Eastland 2015, no pet.). The appellant in *Tienda* asserted that sexual

7

contact could not have occurred because there were multiple layers of clothing or fabric separating his body and the minor victim's body. *Id.* at 873. We cited *Resnick v. State* for the proposition that "the essence of the act of touching 'is to perceive by the sense of feeling.'" *Id.* (quoting *Resnick v. State*, 574 S.W.2d 558, 560 (Tex. Crim. App. [Panel Op.] 1978)). Our conclusion in *Tienda* is applicable to the circumstances in this case—touching for the purpose of sexual contact occurs when it is perceived or felt by the person that is touched. *See id.* at 873–74; *see also Resnick*, 574 S.W.2d at 560. Thus, irrespective of the manner in which a defendant touches the anus, breast, or genitals of a minor victim, if it was felt by the victim and done with the requisite mental intent, it constitutes indecency with a child by contact.

As briefed, Appellant solely bases his challenge to the sufficiency of the evidence on his contention that he could not have committed the offense of indecency with a child by contact through the use of an object to touch the genitals of S.R.—a contention that is incorrect. The evidence was sufficient to establish indecency with a child by sexual contact in *Tienda* because the victim testified that she felt the appellant's penis when he was lying on top of her. *Id.* at 874. The same type of evidence is present in this case—S.R. testified that Appellant touched her genitals through her clothing with a vibrator and that she felt it. To the extent that there were any conflicts in the evidence with respect to the offense with which Appellant was charged, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

With respect to evidence of the requisite mental state, direct evidence of what an accused intended at the time he committed the offense is rare. *See Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words."). With respect to a defendant's intent to arouse or gratify his

sexual desire, his intent can be inferred from the act itself. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). Here, placing a vibrator on a minor's genitals can hardly be considered an innocent activity. *See Montgomery v. State*, 810 S.W.2d 372, 396 (Tex. Crim. App. 1990). Viewing all of the evidence in the light most favorable to the verdict, we conclude that any rational trier of fact could have found the essential elements of indecency with a child by contact beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. We overrule Appellant's first and second issues.

*Admissibility of Internet Search History*

In his third issue, Appellant asserts that the trial court erred by overruling his objections to the admission of the web history extracted from his cell phone. As noted previously, the web history revealed searches of sites containing incest pornography involving daddy/daughter pornography. Appellant contends that the search history was not relevant, that it was character conformity evidence that was inadmissible under Rule 404(b), and that its admission violated Rule 403. *See* TEX. R. EVID. 403, 404(b). The State contends that the search history was relevant to establish Appellant's intent and to rebut his statements that his actions with S.R. were not for a sexual purpose.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.— Eastland 2015, no pet.).

9

To be admissible at trial, evidence must be relevant. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. The trial court did not abuse its discretion by determining that the search history was relevant. As noted previously, to convict Appellant of the offense as charged in the indictment, the jury was required to find that Appellant touched S.R.'s genitals with the intent to arouse or gratify his sexual desire. *See* PENAL § 21.11(c)(1). The search history was relevant to this question, and it served to rebut Appellant's statements during his recorded interview disclaiming a sexual intent.

Rule 404(b)(1) prohibits the admission of evidence of a crime, wrong, or other act to prove a person's character to show that, on a particular occasion, the person acted in conformity with that character. TEX. R. EVID. 404(b)(1). Rule 404(b)(2) permits the admission of such evidence for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. TEX. R. EVID. 404(b)(2). The issue of whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Under Rule 404(b), "[t]he trial judge must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence." *Montgomery*, 810 S.W.2d at 391. We must affirm the trial court's ruling if that ruling is within the zone of reasonable disagreement. *Id.* Consequently, we review a trial court's ruling on the admissibility of extraneous offenses for an abuse of discretion. *De La Paz*, 279 S.W.3d at 343. Here, the trial court did not abuse its discretion by overruling Appellant's

Rule 404(b) objection because the search history was relevant to a material, non-propensity issue—Appellant's intent with respect to his conduct with S.R.

Under Rule 403, a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403; *see Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render*, 347 S.W.3d at 921.

In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999) (quoting *Montgomery*, 810 S.W.2d at 392). When conducting a Rule 403 analysis, the trial court must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). These factors may well blend together in practice. *Id.* Rule 403, however, does not require

that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.*

The first *Gigliobianco* factor focuses on the inherent probative force of the proffered evidence. As the Court of Criminal Appeals explained in *Gigliobianco*, "probative value" is more than just relevance. 210 S.W.3d at 641. It refers to how strongly an item of evidence "serves to make more or less probable the existence of a fact of consequence to the litigation[,] coupled with the proponent's need for that item of evidence." *Id.* We have already addressed the relevance of the challenged evidence to show Appellant's mental state when engaging in the conduct with which he was charged. The search history rebutted Appellant's denials in his recorded interview. With respect to the State's need for the evidence under the second *Gigliobianco* factor, as is often the case with sexual offenses against children, the State's case pitted S.R.'s version of the events against Appellant's denials. Appellant denied during his recorded interview that any conduct of a sexual nature occurred between Appellant and S.R. Thus, the evidence of the search history rebutted Appellant's denials and was relevant to the issue of Appellant's mental state.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. The third factor focuses on the tendency of the evidence to suggest a decision on an improper basis. Evidence of a sexual nature involving children or family members is inherently inflammatory and prejudicial. *See Montgomery*, 810 S.W.2d at 397; *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd). We note that the trial court included a limiting instruction in its charge to the jury regarding the jury's consideration of extraneous

12

matters. We presume the jury obeyed this instruction. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) (appellate courts presume that the jury follows instructions). Thus, the trial court took measures to mitigate the potential improper influence of the challenged evidence. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd); *Newton*, 301 S.W.3d at 320.

The fourth factor focuses on the potential of the proffered evidence to confuse or distract the jury from the main issues. This factor weighs in favor of admission because the evidence was probative of the nature of the relationship between Appellant and S.R. and his mental state when engaging in the charged conduct. The fifth factor focuses on the potential of the proffered evidence to mislead the jury. We have previously noted that the trial court gave a limiting instruction. Finally, the sixth factor focuses on the time needed to present the proffered evidence and whether it is cumulative of other evidence. The evidence of the search history only spanned a few pages of the reporter's record, and it was not cumulative of other evidence.

In summary, the evidence of the search history was prejudicial. However, Rule 403 contemplates excluding evidence only when there is a "clear disparity" between the offered evidence's prejudice and its probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). Considering the standard of review, the presumption favoring admissibility of relevant evidence, and the *Gigliobianco* factors, we cannot conclude that the trial court abused its discretion in overruling Appellant's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568 ("Because Rule 403 permits the exclusion of admittedly probative evidence, it is a remedy that should be used sparingly, especially in 'he said, she said' . . . cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." (footnote omitted)). We overrule Appellant's third issue.

13

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

February 9, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

14