Opinion filed March 23, 2023



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00267-CR

_____

## KENNETH EUGENE WALKER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 13286**

## M E M O R A N D U M   O P I N I O N

Appellant, Kenneth Eugene Walker, was indicted for the second-degree felony offense of aggravated assault with a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2022). The jury convicted Appellant of the charged offense, found an enhancement allegation to be "true," and assessed his punishment at five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. In his sole issue on appeal, Appellant contends that the trial court abused its discretion when it admitted evidence of Appellant's prior felony convictions during the guilt/innocence phase of trial. We affirm.

## I. *Factual Background*

Because of the narrow scope of Appellant's complaint, we only recite the facts that are pertinent to the issue that we must address.

On May 7, 2020, Appellant and Richard Long engaged in a physical altercation because Appellant had confronted, screamed and cursed at, and threatened Nancy Tibbetts, Long's common-law wife. During the altercation, Appellant stabbed Long in the back with a pocketknife. Appellant also threatened to shoot Long and Tibbetts.

Sergeant Adam Davis and Officer Kurt Huckabee of the Sweetwater Police Department were dispatched to the scene of the assault and investigated the encounter between Appellant and Long. Sergeant Davis testified that after he arrived at the scene, Appellant approached him; Appellant was agitated and admitted several times that he had "stuck" Long with a knife. According to Appellant, he stabbed Long in self-defense because he was afraid of Long and because Long was the first aggressor. Sergeant Davis observed a wound on Long's back; however, he did not notice any injuries on Appellant's person.

Appellant testified that he, Long, and Tibbetts were acquainted before the altercation. Sometime before the altercation, Long agreed to install a water heater for Appellant at Appellant's home. According to Appellant, he decided to check on Long's progress and noticed a needle in Long's arm, which Appellant believed contained methamphetamine. Long and Appellant did not discuss what Appellant had observed.

Appellant testified during direct examination about what he had observed: "I can't say that I understand that, but that's the way [Long] uses drugs." During cross-examination, the State sought to clarify Appellant's "understanding" of drug use. Appellant testified that he was familiar with cocaine and been an addict since 1989. Despite this, Appellant testified that he had recently experienced "a lengthy [period]

2

of sobriety" until he was arrested for possession of a controlled substance the day before trial commenced.

Appellant also testified during cross-examination that he was untruthful—about the manner in which he had used the knife to defend himself when Long "attacked" him—when he explained the circumstances of the altercation to Sergeant Davis. When asked if he considered himself to be a truthful person and if he had been untruthful to law enforcement in the past, Appellant stated: "I've never really had much dealings with law enforcement" and "never [had] been in that much trouble as far as having to conversate with them." Later, Appellant acknowledged, over objection, to having been previously convicted of the following offenses: (1) making a false report to law enforcement in 2006, a misdemeanor; (2) assault family violence in 2006, a misdemeanor; (3) violation of a protective order in 2002, a misdemeanor; (4) Class A misdemeanor assault in 2008; (5) possession of a controlled substance, cocaine, in 1990, a third-degree felony; and (6) delivery of a controlled substance in 1991, a first-degree felony.

## II. *Analysis*

In his sole issue on appeal, Appellant argues that the trial court abused its discretion when it allowed the State to impeach Appellant with his prior felony drug convictions during the guilt/innocence phase of trial.[1] Specifically, Appellant contends that his two felony drug convictions were too remote and not relevant to the issue as to who was the first aggressor. As such, he was harmed by the trial

---

[1]Although the trial court also permitted the State to impeach Appellant with evidence of the prior misdemeanor convictions mentioned above, Appellant does not complain on appeal about the trial court's admission of such evidence. Rather, Appellant's complaint on appeal is limited to what he contends is the trial court's erroneous admission of Appellant's "ancient" felony drug convictions. Therefore, we restrict our analysis to the sole complaint that Appellant has raised and briefed on appeal. *See* TEX. R. APP. P. 38.1(f), (i), 47.1; *see also Wolfe v. State*, 509 S.W.3d 325, 343–45 (Tex. Crim. App. 2017) ("[A]n appellant is the master of his or her own destiny with respect to what issues the court of appeals is required to address . . . ." Accordingly, "[w]hen an appellant has narrowed [his] arguments on appeal to address only a particular basis for disturbing a trial court's ruling, it is not for the appellate court to then scour the record in search of other possible bases for reversing the trial court's ruling on appeal.").

court's erroneous admission of this evidence. The State asserts that the challenged evidence was relevant and properly admitted because (1) Appellant, by testifying, put his credibility, character for truthfulness, and veracity at issue and (2) the evidence was necessary to clarify, correct, or rebut false statements made by Appellant concerning his knowledge of drug use, his criminal history, his character for truthfulness, and his status as a law-abiding citizen.

### A. *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 855 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019)). We will not reverse a trial court's decision to admit or exclude evidence, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). Furthermore, we will uphold a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct under any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

### B. *Admissibility of Criminal Convictions for Impeachment*

#### 1. *Rule 609*

A trial court must admit evidence of a criminal conviction that is offered to attack a witness's character for truthfulness if (1) the witness has been previously convicted of a felony offense or a crime of moral turpitude, regardless of the punishment, (2) the trial court determines that the probative value of admitting this evidence outweighs its prejudicial effect, and (3) the evidence is elicited from the witness to be impeached or is established by a public record. *See* Tex. R.

4

Evid. 609(a).  However, where, as in this case, the State offers evidence of a witness's "remote" convictions,[2] Rule 609(b) limits the scope of Rule 609(a) and provides that such evidence is inadmissible unless the trial court determines that "its probative value, supported by specific facts and circumstances, *substantially* outweighs its prejudicial effect." *Id.* R. 609(b) (emphasis added).  Thus, because the evidence that Appellant contends the trial court erroneously admitted consists of remote convictions under Rule 609(b), we apply the "substantially outweighs" standard to determine whether evidence of Appellant's prior felony drug convictions was properly admitted.  *Jones-Jackson v. State*, 443 S.W.3d 400, 403 (Tex. App.— Eastland 2014, no pet.) (citing *Leyba v. State*, 416 S.W.3d 563, 566–69 (Tex. App.— Houston [14th Dist.] 2013, pet. ref'd); *Hankins v. State*, 180 S.W.3d 177, 180 (Tex. App.—Austin 2005, pet. ref'd)).

Certainly, Appellant's prior felony drug convictions that he claims the trial court erroneously admitted fall within the parameters and satisfy the admissibility requirements of Rule 609(a).  *See* Tex. R. Evid. 609(a)(1).  However, because the felony convictions that the trial court admitted are remote, the admissibility of Appellant's prior felony drug convictions is dependent upon the application of Rule 609(b)'s balancing standard, the *Theus* factors,[3] and other considerations discussed below.

### 2.  Theus *Factors/Rule 609 Balancing*

The Court of Criminal Appeals in *Theus v. State* set out a nonexclusive list of factors that courts should use and consider when applying Rule 609(a) in weighing the probative value of admitting a testifying witness's prior convictions against their prejudicial effect.  The *Theus* factors are: (1) the impeachment value of the prior

---

[2]Rule 609(b) defines a "remote" conviction as one where more than ten years have elapsed since the date of the witness's conviction or release from confinement, whichever is later.

[3]*Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992).

5

crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent criminal history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the witness's testimony; and (5) the importance of the witness's credibility. *Theus*, 845 S.W.2d at 880. Although not controlling in light of the more stringent Rule 609(b) admissibility standard, these factors are nonetheless instructive to our review of the trial court's evidentiary rulings in this case.

When considering the probative value of evidence versus its possible prejudicial effect, we presume that the trial court conducted the appropriate balancing test, which need not be shown in the record. *Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd) (citing *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd)); *Bryant v. State*, 997 S.W.2d 673, 676 (Tex. App.—Texarkana 1999, no pet.). In reviewing the trial court's decision to admit evidence of a witness's prior conviction, "we must accord the trial court 'wide discretion.'" *Theus*, 845 S.W.2d at 881 (quoting *United States v. Oaxaca*, 569 F.2d 518, 526 (9th Cir. 1978)). As such, we will reverse a trial court's decision to admit evidence of a witness's prior conviction for impeachment purposes only if a clear abuse of discretion is shown and the decision lies outside the zone of reasonable disagreement. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

It is axiomatic that a defendant who testifies at trial puts his credibility and veracity in issue and may therefore be cross-examined and impeached by the opposing party in the same manner as any other witness. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010); *Hammett v. State*, 713 S.W.2d 102, 105 (Tex. Crim. App. 1986). Further, otherwise inadmissible prior convictions may be used to impeach a testifying defendant if the defendant creates a false impression with the jury concerning his prior criminal history (arrests, convictions, and charges)

6

and the extent of his encounters with law enforcement. *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015); *Prescott v. State*, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988); *Ochoa v. State*, 481 S.W.2d 847, 850 (Tex. Crim. App. 1972); *Jones-Jackson*, 443 S.W.3d at 404. Under those circumstances, the opposing party may elicit testimony from the defendant concerning his prior criminal history in order to clarify or correct the false impression. *Prescott*, 744 S.W.2d at 131; *Jones-Jackson*, 443 S.W.3d at 404–05. Therefore, relying on the five *Theus* factors, we must compare the probative value of Appellant's prior remote felony drug convictions with the possible prejudicial effect of their admission. *Theus*, 845 S.W.2d at 881; *see Schmidt v. State*, 373 S.W.3d 856, 862–63 (Tex. App.—Amarillo 2012, pet. ref'd).

We first consider the impeachment value of the prior convictions. The impeachment value of crimes involving deception is higher than for crimes that do not involve deception. *See Theus*, 845 S.W.2d at 881; *Jones-Jackson*, 443 S.W.3d at 403; *see also Hankins*, 180 S.W.3d at 181. However, Appellant's prior felony drug convictions do not, on this record, appear to involve deception. *See Theus*, 845 S.W.2d at 881 ("The impeachment value of crimes that involve deception is higher than [for] crimes that involve violence, and the latter have a higher potential for prejudice."); *Jones-Jackson*, 443 S.W.3d at 403–04 (although felony drug convictions are generally not considered to be crimes of deception, whether a drug offense constitutes a crime of deception depends on the facts of the offense); *see also In re Lock*, 54 S.W.3d 305, 311 (Tex. 2001) (felony drug possession convictions are not per se crimes of moral turpitude). Here, the first *Theus* factor weighs against the admission of Appellant's prior felony drug convictions because such convictions do not involve deception. *See Theus*, 845 S.W.2d at 881.

The second *Theus* factor will weigh in favor of admission if the past crimes were committed recently and the witness has "demonstrated a propensity for running

afoul of the law." *Id.* As we have said, Appellant's prior felony drug convictions are remote. Appellant's felony drug convictions were over twenty-five years old at the time of trial, and an intervening gap of approximately fifteen years had occurred between his felony convictions and his subsequent misdemeanor convictions. Indeed, Appellant testified that he was arrested for possession of a controlled substance the day before his trial commenced. However, that fact coupled with the remoteness of his prior felony drug convictions does not necessarily demonstrate a propensity for Appellant running afoul of the law. Therefore, the second *Theus* factor weighs against the admission of Appellant's prior felony drug convictions. *See Theus*, 845 S.W.2d at 881.

The third *Theus* factor will weigh against admission if the nature of the prior convictions and the charged offense are similar. *Theus*, 845 S.W.2d at 881. "[T]he admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.* Appellant was convicted in this case of aggravated assault with a deadly weapon. Clearly, there is no similarity between the charged offense and Appellant's prior felony drug convictions. Therefore, the third *Theus* factor weighs in favor of the admission of Appellant's prior felony drug convictions.

The fourth and fifth *Theus* factors "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id.* When the evidence in the case focuses primarily on the testimony of only the defendant and the witnesses presented by the State, the significance of the defendant's testimony and his credibility increases. *Id.*; *see also Hankins*, 180 S.W.3d at 181 ("The importance of appellant's credibility adds probative value."). It follows that as the importance of the defendant's credibility increases, so does the State's need for the opportunity to impeach the defendant. *Theus*, 845 S.W.2d at 881. Here, Appellant

8

was the only witness who testified in his defense. By testifying, Appellant put his credibility and veracity in issue. *Bowley*, 310 S.W.3d at 434 (citing *Feldman v. State*, 71 S.W.3d 738, 755 (Tex. Crim. App. 2002)). Appellant raised a claim of self-defense, which the jury implicitly rejected, and the issue of who was the first aggressor was contested and central to the case. Moreover, Appellant "opened the door" to the admissibility of his prior criminal history when he created a false impression concerning his knowledge of drug use and his status as a law-abiding citizen. Consequently, Appellant's credibility was a crucial and important factor in the jury's consideration of the evidence. As such, the State's need for the opportunity to impeach and challenge Appellant's credibility was high and increased in turn. *See Theus*, 845 S.W.2d at 881. Therefore, the fourth and fifth *Theus* factors weigh in favor of the admission of Appellant's prior felony drug convictions.

### 3. *Opening the Door*

Irrespective of the applicability of the *Theus* factors, Appellant "opened the door" to the admissibility of his prior criminal history when he created a false impression with the jury concerning his knowledge of drug use and his status as a law-abiding citizen. *See Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (a party "opens the door" to the admission of otherwise inadmissible evidence when he leaves a false impression with the jury, and the opposing party is allowed to expose, correct, or rebut the false impression). Thus, and when this occurs, the State may present evidence of any prior convictions that involve the defendant when the defendant "opens the door" by creating the false impression that he is a law-abiding citizen. *See Theus*, 845 S.W.2d at 879; *Trippell v. State*, 535 S.W.2d 178, 181 (Tex. Crim. App. 1976). Such is the case here.

Based on our consideration of the *Theus* factors (the majority of which weigh in favor of admission), the standard for admissibility under Rule 609(b), and the wide discretion we afford the trial court with its evidentiary rulings, we hold that the

9

trial court did not abuse its discretion when it determined that the probative value of Appellant's prior felony drug convictions, although remote, was not substantially outweighed by any prejudicial effect. Therefore, the trial court did not abuse its discretion when it (1) permitted the State to impeach Appellant with his prior felony drug convictions and (2) admitted the challenged evidence.

C. *Harmless Error Analysis/Limiting Instruction*

Even if we were to conclude that the trial court erred when it admitted the challenged evidence, such error, if any, is harmless. A trial court's erroneous evidentiary ruling does not result in constitutional error; therefore, it will be disregarded, and reversal is not required, if the error did not affect the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b) (the nonconstitutional error standard); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Garcia*, 126 S.W.3d at 927; *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). In assessing the likelihood that the claimed error adversely affected the jury's decision, we must consider (1) the entire record, including all the evidence presented at trial, (2) the nature of the evidence supporting the jury's verdict, (3) the character of the alleged error and how it might be considered with the other evidence in the case, (4) the trial court's instructions to the jury, (5) whether the State emphasized the error, and (6) whether the evidence of the defendant's guilt is overwhelming. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Motilla v. State*, 78 S.W.3d 352, 355–58 (Tex. Crim. App. 2002); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Therefore, we will not reverse a conviction for nonconstitutional error

10

if, after examining the record as whole, we have fair assurance that the error did not influence the jury's verdict, or if it did, it had only a slight effect. *Barshaw*, 342 S.W.3d at 93; *Motilla*, 78 S.W.3d at 355; *Johnson*, 967 S.W.2d at 417.

In our harm analysis, we first assess the nature of the evidence supporting the jury's verdict. Here, the State presented testimony from four witnesses, several photographs of Long's injuries, and body camera footage from Sergeant Davis and Officer Huckabee. Long and Tibbetts testified that Appellant (1) was the first aggressor during the altercation, (2) threatened Tibbetts prior to the altercation, (3) provoked the altercation, and (4) stabbed Long with a knife. The admitted photographs show the placement and severity of Long's stab wound, and testimony was presented regarding the pain that Long experienced as a result of the stabbing. Sergeant Davis testified that Long's stab wound was not a defensive wound, and the body camera evidence, which substantially corroborated the witness's testimony, recorded Appellant's agitation and admissions. Further, Appellant repeatedly admitted, at the scene of the altercation and at trial, to intentionally stabbing Long in the back with a knife. Thus, considering the nature of the evidence in support of the jury's verdict, we have fair assurance that any alleged error in the trial court's admission of Appellant's two prior felony drug convictions did not adversely affect or influence the jury's decision, or if it did, it had only a slight effect.

Next, we assess the character of the alleged error and how it may be considered with the other evidence presented. Here, Appellant's prior felony convictions bore on his credibility and could be considered by the jury in the context of weighing his credibility and the credibility of Long and Tibbetts. Moreover, because Appellant raised the claim of self-defense, the credibility of Long, Tibbetts, and Appellant was center stage and central to the case. As discussed above, the State questioned Appellant regarding his prior felony drug convictions only after Appellant "opened the door" to such inquiry by creating a false impression with the

11

jury concerning his prior criminal history, his knowledge of drug use, and his previous encounters with law enforcement. The purpose of the State's questions was to clarify or correct the false impression. Appellant's testimony, however, was not the only evidence presented to the jury regarding a witness's criminal history and/or encounters with law enforcement. Appellant's trial counsel cross-examined Long and Tibbetts regarding their prior encounters with law enforcement, including the extent of their prior convictions, current arrests, and pending charges. As such, the jury was aware that evidence of one's prior encounters with law enforcement is not necessarily pertinent to the offense on trial, but rather is relevant and of importance to assessing a witness's credibility.

Importantly, the trial court included a limiting instruction in its guilt/innocence charge. The instruction addressed and restricted the jury's use and consideration of the admitted impeachment evidence (Appellant's prior felony drug convictions) so as to mitigate any potential improper consideration of this evidence by the jury when assessing Appellant's credibility and deciding his guilt. The instruction read as follows:

> The State has introduced evidence of extraneous crimes or bad acts other than the ones charged in the indictment in this case. Such evidence cannot be considered by you against the defendant as evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider it for any other purpose.

Assuming, without deciding, that the jury even considered this evidence for any purpose in determining Appellant's guilt, it is presumed that the jury follows a trial court's instructions regarding the consideration of evidence. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Therefore, any potential harm to Appellant would be further mitigated by the trial court's limiting instruction. *See id.*; *Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd);

12

*Barron v. State*, 630 S.W.3d 392, 412–13 (Tex. App.—Eastland 2021, pet. ref'd). Therefore, based on this consideration, we have fair assurance that any alleged error in the trial court's admission of Appellant's two prior felony drug convictions did not adversely affect or influence the jury's decision, or if it did, it had only a slight effect.

We next assess whether the State emphasized the purported error. Here, the State briefly cross-examined Appellant regarding his prior felony drug convictions but did not offer the judgments of conviction until the punishment phase. In its closing argument, the State did not specifically mention Appellant's prior felony convictions but only alluded to Appellant's "unwillingness to acknowledge what he pled to" as bearing on Appellant's credibility and character for untruthfulness, which was consistent with the purpose of the trial court's limiting instruction. Instead, the State's closing argument focused primarily on who was the first aggressor and whether or not Appellant stabbed Long in self-defense. Because the State did not emphasize the alleged error, we have fair assurance that any alleged error in the trial court's admission of Appellant's two prior felony drug convictions did not adversely affect or influence the jury's decision, or if it did, it had only a slight effect.

Finally, we consider the degree of additional evidence that is indicative of Appellant's guilt. It is undisputed, and Appellant admitted, that he committed the charged offense by stabbing Long in the back with a knife. In addition to witness testimony, the photographs of Long's injuries, the body camera evidence, and Appellant's admissions to committing the charged offense, evidence was also presented to the jury that Appellant, who is a larger man than Long, "grabbed [Long] . . ., pull[ed] him towards [Appellant]," and stabbed him because it was "called for." Appellant testified that "[t]here's no doubt" that he committed the offense and he further stated: "[T]o be honest with you, if it happened today in the same circumstances, I would probably do the same thing again today." Here, the record

is replete with overwhelming evidence of Appellant's guilt. Therefore, in light of this evidence, we have fair assurance that any alleged error in the trial court's admission of Appellant's two prior felony drug convictions did not adversely affect or influence the jury's decision, or if it did, it had only a slight effect.[4]

Based on the record before us, we hold that the trial court's decision to admit the challenged evidence, even if erroneous, did not affect Appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Accordingly, for all of the reasons set forth above, we overrule Appellant's sole issue on appeal.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

March 23, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[4]We note that Appellant's punishment was enhanced and that the jury assessed Appellant's punishment at the minimum term the law allows under the circumstances. *See* PENAL § 12.42(b) (at a trial for a second-degree felony offense, the defendant shall be punished within the range for a first-degree felony if it is shown that he has been previously and finally convicted of a felony offense other than a state jail felony); *see also id.* § 12.32(a) (the punishment range for a first-degree felony offense is either imprisonment for life or for a term of not less than five years but no more than ninety-nine years). While we do not consider Appellant's sentence in determining whether Appellant was harmed under the *Gonzalez* and *Motilla* factors, we cannot ignore that the jury's chosen punishment for Appellant is, arguably, at least some evidence that the jury did not improperly consider Appellant's prior felony drug convictions in determining his guilt during the guilt/innocence phase of trial. As such, the jury's punishment determination, if applicable, would further support our conclusion that any alleged error in the trial court's admission of Appellant's two prior felony drug convictions did not adversely affect or influence the jury's guilt/innocence decision, or if it did, it had only a slight effect.

14